29 F.3d 638
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
WHITE SWAN, LTD., an Oregon Corporation, Plaintiff-Appellant,
v.
The NATURE COMPANY, a California Corporation,
Defendant-Counter-Claimant-Appellee.
 No. 93-35213.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 14, 1994.
Decided July 15, 1994.
 
 Before: GOODWIN, PREGERSON, and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 OVERVIEW
 
 2
 White Swan, Ltd. appeals the District Court's grant of summary judgment in favor of The Nature Company. White Swan Ltd.'s action alleged trademark infringement pursuant to Sec. 32 of the Lanham Act, 15 U.S.C. Sec. 1114, unfair competition and false designation of origin pursuant to Sec. 43 of the Lanham Act, 15 U.S.C. Sec. 1125(a), and state common law claims of trademark infringement, unfair trade practices, and trademark dilution. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291. We affirm.
 
 BACKGROUND
 
 3
 Appellant White Swan, Ltd. ("White Swan") is a wholesale marketer of garden-related products, including flower seeds and decorative garden accessories. White Swan's products are sold nationally at retail outlets and garden shops.
 
 
 4
 In 1986, White Swan began marketing flower seeds in shaker cans[1] based on a concept of "theme gardens." Each can contains selected seed varieties intended for a particular purpose, such as attracting butterflies or hummingbirds, or growing fragrant or low-water use flower gardens. All cans bear the trademarks "WHITE SWAN," "SHAKE SCATTER & GROW," and a particular garden trademark, such as "BUTTERFLY GARDEN." In 1986, White Swan applied to the Registrar of Trademarks to register "HUMMINGBIRD GARDEN" and "BUTTERFLY GARDEN." "HUMMINGBIRD GARDEN" was registered in 1986; the "BUTTERFLY GARDEN" application is still pending,[2] awaiting a Cancellation Proceeding.[3]
 
 
 5
 Appellee The Nature Company ("Nature Co.") is a retailer that sells nature-related products in its retail stores and mail order catalogue. From 1987 to 1990, Nature Co. bought approximately $570,000 worth of White Swan products, including $180,000 worth of "HUMMINGBIRD GARDEN" and "BUTTERFLY GARDEN" flower seeds, and sold them in Nature Co. retail stores. Beginning in 1988, Nature Co. sold an exclusive line of White Swan seeds under a label bearing both White Swan's and Nature Co.'s trademarks. In 1989, Nature Co. quit ordering White Swan flower seed products. In 1990, it stopped selling these products.
 
 
 6
 In 1992, Nature Co. began selling the flower seed products with labels that contained the phrases "BUTTERFLY SEED MIX" and "HUMMINGBIRD SEED MIX." The year before, White Swan had sent its wholesale catalogue which included flower seed products to Ivelich at Nature Co. Nonetheless, Nature Co.'s senior buyer, Sandra Ivelich, who was hired in June 1991, stated in her deposition that she was unaware of any other product similar to that which she had developed for Nature Co. She further stated that she was unfamiliar with White Swan's products or trademarks when she developed the flower seed products in shaker cans for Nature Co. Ivelich indicated that she first became aware of White Swan's products at a trade show she attended in February of 1992.
 
 
 7
 White Swan sent a "cease and desist" letter to Nature Co.'s president and later filed suit against Nature Co. In response, to the suit, Nature Co. proposed to modify its labels from "NATURE GARDEN COLLECTION," "BUTTERFLY SEED MIX" (or "HUMMINGBIRD SEED MIX,") "A Blend of Nine Flower Varieties," to "NATURE GARDEN COLLECTION," "for BUTTERFLIES" (or "for HUMMINGBIRDS,") "A Blend of Nine Flower Seed Varieties to Attract Butterflies" (or "Hummingbirds"). White Swan rejected this suggestion and pressed the current action.
 
 
 8
 Nature Co. currently sells flower seeds under the modified labels it proposed to settle the suit. In response to White Swan's suit, Nature Co. counterclaimed, seeking a declaration that it had not engaged in unfair competition or trademark violation, and that White Swan's use of "butterfly" and "hummingbird" are descriptive terms without secondary meaning and are therefore not protectable as individual trademarks. Further, Nature Co. seeks a declaration that its modified labels do not violate any rights held by White Swan.
 
 
 9
 Both White Swan and Nature Co. moved for summary judgment. Following oral argument, the District Court concluded that Nature Co.'s use of "BUTTERFLY SEED MIX" and "HUMMINGBIRD SEED MIX" was descriptive and a fair use. The District Court thus granted summary judgment for Nature Co. on its counterclaim for a declaration that its uses did not infringe upon any rights of White Swan.[4] In addition, the District Court concluded that even if Nature Co. used "BUTTERFLY SEED MIX" and "HUMMINGBIRD SEED MIX" as trademarks, there was little likelihood of consumer confusion between Nature Co.'s and White Swan's products. Finally, the District Court granted summary judgment for Nature Co. on its counterclaim for a declaration that the use of its modified packaging would not constitute trademark infringement or unfair competition. As a consequence, the District Court denied all of White Swan's summary judgment motions.
 
 ANALYSIS
 
 10
 We review a grant of summary judgment de novo. Jones v. Union Pacific R.R., 968 F.2d 937, 940 (9th Cir.1992). Our review is governed by the same standard used by the trial court under Federal Rule of Civil Procedure 56(c). Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir.1986). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Federal Deposit Ins. Corp. v. O'Melveny & Meyers, 969 F.2d 744, 747 (9th Cir.1992). The District Court's classification of a term as "descriptive" is a factual determination subject to review for clear error. "[W]here a mixed question of law and fact is predominately one of fact, we review the trial court's determination under the clearly erroneous standard." Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1355 (9th Cir.1986) (quoting United States v. McConney, 728 F.2d 1195, 1203-04 (9th Cir.) (en banc), cert. denied, 469 U.S. 824 (1984).
 
 
 11
 On appeal, White Swan alleges that the District Court improperly granted Nature Co.'s motions for summary judgment because there were genuine issues of material fact concerning (1) whether Nature Co. used the phrases "BUTTERFLY SEED MIX" and "HUMMINGBIRD SEED MIX" descriptively and not as trademarks to describe its flower seeds, and (2) whether such use by Nature Co. was fair and in good faith.
 
 TRADEMARK INFRINGEMENT
 
 12
 First of all, White Swan argues that the District Court erred in determining that Nature Co.'s use of the phrases "BUTTERFLY SEED MIX" and "HUMMINGBIRD SEED MIX" did not constitute trademark infringement and unfair competition under Accuride Intern., Inc. v. Accuride Corp., 871 F.2d 1531 (9th Cir.1989) and AMF, Inc. v. Sleekcraft Boats, 559 F.2d 341 (9th Cir.1979). Because we conclude that the District Court properly decided this case under the fair use doctrine, we need not address the trademark infringement issue.
 
 FAIR USE DOCTRINE
 
 13
 A trademark conveys a limited property right in a specific word, phrase, or symbol. New Kids on the Block v. New America Pub., Inc., 971 F.2d 302, 305 (9th Cir.1992). Trademarks have an important, albeit limited purpose: They serve to identify the manufacturer of a good or provider of a service. Id. Trademark protection, however, is also limited: It aims to prevent rival manufacturers from capitalizing on their competitors' investment of time, money, and resources but does not aim to create a property interest in all words used in a commercial context. Id. Underlying this limitation is the concern that the primary cost of allowing this property right is the restricted use of words in the commercial context. Id. at 306.
 
 
 14
 This concern frequently arises when a trademark describes a person, place, or attribute of a product. Id. Although informative words that are not trademarks are frequently available for describing products,[5] sometimes there is no practical substitute for the trademark itself. "If the trademark holder were allowed exclusive rights in such use, the language would be depleted in much the same way as if generic words were protectable." Id. Thus, trademark law recognizes a defense of "fair use" where the mark is used "otherwise than as a mark" and "fairly and in good faith only to describe the goods or services of [a producer], or their geographic origin." 15 U.S.C. Sec. 1115(b)(4). This defense "forbids a trademark holder to appropriate a descriptive term for his exclusive use and so prevent others from accurately describing a characteristic of their goods." New Kids, 971 F.2d at 306 (citations omitted). Moreover, the fair use defense applies to actions brought under the Lanham Act and to state claims of trademark infringement.
 
 
 15
 In its decision, the District Court found that Nature Co.'s use of the phrases "BUTTERFLY SEED MIX" and "HUMMINGBIRD SEED MIX" on its flower seed labels was descriptive and done in good faith, and thus defensible under the fair use doctrine. As the District Court stated:
 
 
 16
 Defendant's use of the phrases ... are not [as] trademarks identifying a source, but instead are descriptive phrases used fairly to describe the nature, qualities and characteristics of the seed mixes.... [Nature Co.'s] use of "butterfly" and "hummingbird" are the only words reasonably available to describe [its] products: seed mixes designed to attract butterflies or hummingbirds.
 
 
 17
 We find no error in this determination. As we recently stated in New Kids:
 
 
 18
 Cases like these are best understood as involving a non-trademark use of a mark.... [W]here the use of the trademark does not attempt to capitalize on consumer confusion or to appropriate the cachet of one product for a different one. Such nominative use of a mark--where the only word reasonably available to describe a particular thing is pressed into service--lies outside the strictures of trademark law: Because it does not implicate the source-identification function that is the purpose of trademark, it does not constitute unfair competition.... "When the mark is used in a way that does not deceive the public we see no such sanctity in the word as to prevent its being used to tell the truth."
 
 
 19
 971 F.2d at 307-08 (quoting Prestonettes, Inc. v. Coty, 264 U.S. 359, 368).
 
 
 20
 White Swan, however, contends that Nature Co.'s use of the words "butterfly" and "hummingbird" fail to satisfy the fair use doctrine because of several alleged "factual" disputes.[6] First, White Swan contends that the words "butterfly" and "hummingbird" appear "undeniably larger and more dominant that anything else on the labels." Our viewing of the seed can labels does not support this contention.[7] The words "BUTTERFLY" and "HUMMINGBIRD" are printed in identical type face and size as the words "SEED MIX."
 
 
 21
 Further, White Swan suggests that there is a factual dispute over whether Nature Co. could have described its products as "seeds for growing flowers attractive to hummingbirds (or butterflies.") Although the suggestion might be physically possible, the law does not require Nature Co. to use such cumbersome language. Again, in New Kids we said:
 
 
 22
 [O]ne might refer to the "two-time world champions" or "the professional basketball team from Chicago," but it's far simpler (and more likely to be understood) to refer to the Chicago Bulls. In such cases, use of the trademark does not imply sponsorship or endorsement of the product because the mark is used only to describe the thing, rather than to identify its source.
 
 
 23
 971 F.2d at 306. In addition, we reject White Swan's suggestion that Nature Co. should be required to change its seed can labels because other competitors of White Swan have done so. Because one competitor has made a compromise to avoid a lawsuit does not impel all other competitors to do so.
 
 
 24
 White Swan relies on Sands, Taylor & Wood v. Quaker Oats Co., 978 F.2d 947 (7th Cir.1992), cert. denied, 113 S.Ct. 1879 (1993), to support its next contention, that Nature Co.'s use of "butterfly" and "hummingbird" is improper and not a fair use because Nature Co. has allegedly used the phrases as attention-getting slogans. We find this reliance misplaced. In Sands, the Seventh Circuit found that Quaker's use of the phrase "THIRST AID" on its Gatorade label as a slogan in addition to its "GATORADE" trademark infringed on Sand's trademark "THIRST-AID" for use with soft drink products. The case before us presents far different facts. For Sands to be applicable to the current case, Nature Co. would have had to use the phrase "BUTTERFLY GARDEN" or "HUMMINGBIRD GARDEN" on its label as a slogan in addition to its "seed mix" reference. As the District Court noted, "Sands is distinguishable from this case because [Nature Co.] is not using [the phrases] as a trademark, but merely ... as common descriptive words, and those words are not used in an unduly prominent manner or as an attention-getting slogan."
 
 
 25
 Finally, White Swan argues that the District Court improperly determined that Nature Co. used the phrases fairly and in good faith. However, neither of the cases to which White Swan directs our attention sheds any light on the issue of good faith in the trademark context.[8]
 
 
 26
 As applied to the present case, "good faith" refers to the intent of Nature Co. to trade on the good will or reputation of White Swan. New Kids, 971 F.2d at 309. We agree with the District Court that there was no evidence of any bad faith conduct by Nature Co. in designing its labels as it did. We see no evidence indicating that Nature Co. either intended to--or in fact has--traded on the good will or reputation of White Swan. White Swan presented no evidence to the District Court of customer confusion regarding the competing flower seed products.[9] Further, Nature Co., who has not sold White Swan's flower seeds since 1990, only sells its flower seeds in its own stores and catalogue, not in any other retail outlets or catalogues where White Swan's customers would expect to find White Swan's products.
 
 
 27
 Thus, we affirm the District Court's finding that no facts indicate that Nature Co. intended in bad faith to trade on the reputation or good will of White Swan. No evidence supports a showing of bad faith where a retailer discontinues selling one product and opts several years later to sell a competing product, so long as customers are not led to believe that the competing product is the original product or is produced by the same manufacturer as the original product.
 
 
 28
 In sum, while we acknowledge that White Swan may have lost sales because Nature Co. is selling a competing product, this fact does not viscerate a finding of fair use. We affirm the District Court's determination that Nature Co.'s use of the words "butterfly" and "hummingbird" on its seed can labels is acceptable under the fair use doctrine.[10]
 
 
 29
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Shaker cans are cylindrical cans that have plastic tops containing holes through which the seeds are scattered for planting
 
 
 [2]
 White Swan acknowledges that it is asserting only its common law rights in the trademark "BUTTERFLY GARDEN."
 
 
 [3]
 White Swan seeks to cancel a blocking registration, "BUTTERFLY BOUQUET," owned by another company (not involved in this litigation) and used for living plants and flowers, and artificial plants and flowers
 
 
 [4]
 On February 12, 1993, the parties stipulated to a dismissal of all remaining counterclaims by Nature Co. that were not resolved by the District Court's order of summary judgment
 
 
 [5]
 Well-known trademarks such as Jell-O, Scotch tape, and Kleenex may be readily described as gelatin, cellophane tape, and facial tissue. New Kids, 971 F.2d at 306
 
 
 [6]
 White Swan's main arguments seem not to be directed to disputed facts, but to the District Court's conclusions based on the facts before it. The only fact about which the parties disagree--the type size on Nature Co.'s seed cans--is readily resolvable by viewing the seed can labels
 
 
 [7]
 The only possible way that the words "butterfly" and "hummingbird" could be viewed as larger than the phrase "seed mix" would be because "butterfly" and "hummingbird" have more letters that "seed mix." This interpretation does not comport with common sense or standard practice in graphic arts; the size and dominance of letters is judged on a per character basis
 
 
 [8]
 Yanez v. United States, 989 F.2d 323, 327 (9th Cir.1993) involved a district court's determination of whether a settlement made between a product supplier and an injured worker was done in good faith. Bothke v. Fluor Engineers & Constructors, Inc., 834 F.2d 804 (9th Cir.1987) involved a district court's granting of summary judgment for an Internal Revenue Service Officer based on the court's determination that the officer had qualified immunity because she subjectively acted in good faith
 
 
 [9]
 The only evidence of actual confusion that White Swan presented concerned a hummingbird expert, Robert Tyrell, who endorses White Swan's products. Mr. Tyrell saw Nature Co.'s flower seeds in a Nature Co. retail store. Mr. Tyrell indicated in a later conversation to White Swan's President, Ruth Saltzman, that he thought Nature Co.'s product might be made by White Swan, based on his knowledge of the prior relationship between White Swan and Nature Co. White Swan thus offered no evidence of customer confusion, nor any other evidence of actual confusion
 
 
 [10]
 Further, we conclude that the District Court properly granted summary judgment for Nature Co. regarding use of its proposed modified packaging and label for its product, because Nature Co.'s use of the words "hummingbirds" and "butterflies" is a proper descriptive use under the fair use doctrine