ACCURIDE INTERNATIONAL, INC.;
Standard Precision, Inc.,
Plaintiffs–Appellants,

v.

ACCURIDE CORPORATION,
Defendant–Appellee.

No. 87–6734.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 2, 1988.

Decided April 14, 1989.

James E. Hawes, Beehler & Pavitt, Newport Beach, Cal., for plaintiffs-appellants.

William A. Streff, Jr., Michael S. Walsh, and Sarah E. Bates, Kirkland & Ellis, Chicago, Ill., Christopher C. Larkin, Graham & James, Los Angeles, Cal., for defendant-appellee.

Before FLETCHER, ALARCON and HALL, Circuit Judges.

FLETCHER, Circuit Judge:

This is an action for trade name infringement, dilution, unfair competition and false designation of origin brought by Accuride International, Inc. against Accuride Corporation. After a bench trial based upon a stipulated trial record, the district court found on all counts for the defendant-appellee, Accuride Corporation. We affirm.

## FACTS

Accuride International, Inc., (AII) a California corporation, is a wholly-owned subsidiary of Standard Precision, Inc., also a California corporation. Standard Precision is a leading producer of drawer slide mechanisms, which it has sold under the "ACCURIDE" trademark since 1962. Yearly sales of "ACCURIDE" slides are approximately $90 million. In 1972, AII was formed to market "ACCURIDE" drawer slides overseas. Plaintiffs have identified themselves in their business literature

merely as "Accuride" for a number of years.

Defendant Accuride Corporation (Accuride or Accuride Corporation) is the successor corporation to the Steel Products Division of the Firestone Tire and Rubber Company. Accuride and its predecessor have used the trademark "ACCU–RIDE" or "ACCURIDE" on truck wheels and rims since 1959. Accuride's predecessor was the leading manufacturer of heavy truck wheels and rims in the world, with sales of $213 million in fiscal 1986. In 1986, an investor group acquired Firestone's Steel Products Division, and adopted "ACCU-RIDE" as the new trade name for its company.

In December of 1986, AII objected to appellee's adoption of "ACCURIDE" as its trade name. Appellee informed AII that it intended to continue using the "ACCU-RIDE" trade name, and AII filed this action in an effort to prevent appellee's use of "ACCURIDE" as a trade name. AII does not challenge appellee's continued use of "ACCURIDE" as a trademark for its wheels and rims.

AII's suit alleges that appellee's use of "ACCURIDE" as its trade name constitutes: (1) a false designation of origin under section 43(a) of the Lanham Act; (2) trade name dilution under section 14330 of the California Business and Professions Code; (3) trade name infringement under sections 14400–14416 of the California Business and Professions Code; and (4) an unfair business practice under section 17200 of the California Business and Professions Code, as well as unfair competition under California common law.

On February 12, 1987, after considering live testimony and documentary evidence, the district court denied AII's request for a preliminary injunction against appellee's use of the "ACCURIDE" trade name. On June 22, 1987, after considering the parties' declarations, documentary evidence and deposition transcripts, the court denied AII's motion for summary judgment on its statutory unfair competition and trade name dilution claims.

Subsequently, the parties agreed to submit the case for decision without further live testimony. After the parties submitted the evidentiary materials comprising the stipulated trial record, the court reviewed the materials and entered judgment in favor of defendant Accuride Corporation on all counts. AII timely appeals. We have jurisdiction over the appeal under 28 U.S.C. § 1291.

## I. *AII's Lanham Act Claim*

Plaintiffs first assert that appellee's adoption of the "ACCURIDE" trade name constitutes a false designation of origin under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). That section provides in relevant part:

> Any person who shall ... use in connection with any goods or services ... any false description or representation, including words or symbols tending falsely to describe or represent the same ... shall be liable to a civil action by any person ... who believes that he is or is likely to be damaged by the use of any such false description or representation.

■ As in an action for trademark infringement under 15 U.S.C. § 1114(1)(a), the key question under section 43(a) is "whether the public is likely to be deceived or confused by the similarity of the marks." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir.1988) (quoting *New West Corp. v. NYM Co.*, 595 F.2d 1194, 1201 (9th Cir.1979)) (citations omitted). *See also* J. McCarthy, *Trademarks and Unfair Competition*, § 9:1 at 301 (2d ed. 1984) ("As in general trademark law, the test for infringement of the names of corporate, professional and business organizations is 'likelihood of confusion.' ").

The district court applied the eight factor test for likelihood of confusion enunciated in *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir.1979).[1] Those factors

---

1. The Ninth Circuit test for likelihood of confusion has been described as an eight factor test as in *Sleekcraft*, a six factor test, *see J.B. Williams*

*Co. v. Le Conte Cosmetics, Inc.*, 523 F.2d 187, 191 (9th Cir.1975), *cert. denied*, 424 U.S. 913, 96 S.Ct. 1110, 47 L.Ed.2d 317 (1976), and *Century 21 v.*

are: (1) strength of the plaintiff's mark/name; (2) proximity of the parties' goods; (3) similarity of the marks/names; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent in selecting the mark/name; and (8) likelihood of expansion of product lines. The district court concluded that there was no likelihood of confusion and therefore no section 43(a) violation. We review *de novo* the district court's rulings on matters of law. We review the district court's finding that there is no likelihood of confusion under the clearly erroneous standard. *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1355 (9th Cir.1985) (en banc).

AII attacks the district court's finding of no likelihood of confusion on two grounds. First, AII argues that the court erred as a matter of law by applying a test used to determine likelihood of confusion in actions involving trade*marks* rather than trade *names*. According to AII, there is a fundamental distinction between trademarks and trade names which renders four of the eight *Sleekcraft* factors irrelevant in a section 43(a) action based upon trade name usage. Second, AII argues that the district court made a number of errors in analyzing the particular factors in the *Sleekcraft* test, and that these errors undermine its conclusion that there is no likelihood of confusion. We address these arguments in turn.

#### A. *Trademarks Versus Trade Names*

Trademarks and trade names are technically distinct. Trade names are symbols used to distinguish companies, partnerships and businesses.[2] Trade names symbolize the reputation of a business as a whole. In contrast, trademarks and service marks are designed to identify and distinguish a company's goods and services.[3] *New West*, 595 F.2d at 1201. The major legal distinction between trademarks and trade names is that trade names cannot be registered and are therefore not protected under 15 U.S.C. § 1114. *Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.*, 675 F.2d 1160, 1163 (11th Cir.1982). However, analogous actions for trade name infringement can be brought under section 43(a). *See New West*, 595 F.2d at 1198–1201; *Walt–West Enterprises, Inc. v. Gannett Co.*, 695 F.2d 1050, 1054 n. 6 (7th Cir.1982).

As a practical matter, courts are rarely called upon to distinguish between trade names, trademarks and service marks. Trade names often function as trademarks or service marks as well. Thus, cases such as this one typically involve a challenge both to trademark and trade name usage. *See e.g., Century 21*, 846 F.2d 1175 (infringement of plaintiff's service mark/trade name); *Alpha Industries, Inc. v. Alpha Steel Tube & Shapes, Inc.*, 616 F.2d 440 (9th Cir.1980) (infringement of plaintiff's trademark/trade name). Perhaps because of this functional overlap, the same broad standards of protection apply to trademarks and trade names. The U.S. Supreme Court has stated:

> Whether the name of a corporation is to be regarded as a trade-mark, a trade name, or both, is not entirely clear under the decisions. To some extent, the two terms overlap.... But the precise difference is not often material, since the law affords protection against its appro-

*Sandlin*, 846 F.2d at 1179, and a five factor test, *see Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215, 1217 (9th Cir.1987). There is no indication that the cases applying five or six factors were intended to undermine *Sleekcraft*, and eliminate consideration of the two or three *Sleekcraft* factors excluded in those cases. *J.B. Williams* explicitly states that the six factors it lists are not meant to be exclusive. 523 F.2d at 191. Thus, the district court did not err as a matter of law in applying the eight factor test enunciated in *Sleekcraft*, rather than the five or six factor test used in some of the later cases.

2. The Lanham Act defines trade names as "individual names and surnames, firm names and trade names used by manufacturers, industrialists, merchants, agriculturalists, and others to identify their businesses, vocations, or occupations...." 15 U.S.C. § 1127.

3. A trademark is defined as "any word, name, symbol, or device or any combination thereof adopted and used by a manufacturer or merchant to identify his goods and distinguish them from those manufactured or sold by others." 15 U.S.C. § 1127.

priation in either view upon the same fundamental principles.

*American Steel Foundries v. Robertson,* 269 U.S. 372, 380, 46 S.Ct. 160, 162, 70 L.Ed. 317 (1926) (citations omitted).

■ More recently, the Ninth Circuit has said that "[t]rade name infringement ... is based on considerations similar to trademark infringement," and that both "preclude one from using another's distinctive mark or name if it will cause a likelihood of confusion or deception as to the origin of the goods." *New West,* 595 F.2d at 1201. *See also West Des Moines State Bank v. Hawkeye Bancorp.,* 722 F.2d 411, 413 (8th Cir.1983) ("[t]rade names (business names) are under modern law accorded the same protection as trademarks"); *Walt–West Enterprises,* 695 F.2d at 1054 n. 6 (using "the terms trademark, service mark and trade name interchangeably in conformity with contemporary judicial parlance"); *Blacks In Government v. National Ass'n of Blacks Within Government,* 601 F.Supp. 225, 227 (D.D.C.1983) ("the law protecting trademark infringement is essentially the same as that protecting commercial and corporate trade names").

■ Despite the fact that trademark and trade name protection are so intertwined, and despite the fact that likelihood of confusion is unquestionably the key to a finding of infringement in either case, AII contends that the differences between trademarks and trade names require courts to apply different tests in assessing whether there is a likelihood of confusion. Specifically, it contends that the proximity of the parties' goods, the marketing channels used, likely degree of purchaser care, and likelihood of expansion of product lines are irrelevant to the likelihood of confusion in a trade name case because trade names are sometimes used in contexts isolated from any association with particular goods.[4] We reject this argument.

AII's position is not supported by any precedent. It cannot cite a single case which distinguishes trade names from trademarks in assessing the factors relevant to a finding of likelihood of confusion. In addition, courts faced with challenges to both trademark and trade name usage of a word or phrase apply the same multifactor likelihood of confusion test. *See e.g., Century 21,* 846 F.2d at 1178–79; *Alpha Industries,* 616 F.2d at 443–45.

Inclusion of the goods-related factors in assessing likelihood of confusion in a trade name context is consistent with the wording of section 43(a) and with the function and purpose of trade names. By its terms, section 43(a) provides a cause of action for false designations of origin used "in connection with goods and services." The critical focus of the likelihood of confusion inquiry under section 43(a) is therefore the effect of defendant's usage of the name on prospective purchasers in the marketplace. *See Alpha Industries,* 616 F.2d at 444–45; *Inc. Publishing Corp. v. Manhattan Magazine, Inc.,* 616 F.Supp. 370, 386 (S.D.N.Y. 1985), *aff'd without opinion,* 788 F.2d 3 (2d Cir.1986) ("the Lanham Act is concerned with confusion among *consumers* "); *Sears, Roebuck & Co. v. Sears Financial Network, Inc.,* 576 F.Supp. 857, 861 (D.D.C.1983). This focus on the realities of the marketplace favors application of the goods-related factors that AII seeks to exclude. The marketing channels and sophistication of prospective consumers are especially relevant in determining whether any confusion in the marketplace is likely to arise from defendant's adoption of "AC-CURIDE" as its trade name. *See Alpha Industries,* 616 F.2d at 444–45 (taking into account sophistication of consumers and channels of trade in assessing likelihood of confusion in trademark/trade name challenge).[5]

---

**4.** For example, AII contends that the name "AC-CURIDE" appears in such contexts as telephone book listings, in newspaper and magazine reports, financial service reports, business cards and oral communications among business people.

**5.** AII's argument that these factors are irrelevant in contexts such as phone book listings and newspaper articles ignores the need to focus upon confusion in the marketplace, as opposed to generalized public confusion. Unless prospective purchasers of AII's goods are confused, there is no § 43(a) cause of action.

Consideration of the goods-related factors is also consistent with the function of trade names. As one prominent authority explains, trade names, trademarks and service marks all serve the same basic purposes—to identify a business and its products or services, to create demand for those products or services, and to protect the company's good will. *See* J. McCarthy, *Trademarks and Unfair Competition*, § 9:1 at 304 (2d ed. 1984). The trade name interests that AII seeks to protect relate to the quality and reputation of the *goods* it produces. Thus, it would be inappropriate to foreclose consideration of factors relating to market realities in assessing the likelihood of confusion arising from appellee's adoption of the "ACCURIDE" trade name. The district court did not err by applying the eight factor *Sleekcraft* test to determine likelihood of confusion.

### B. *Applying the Sleekcraft Test*

AII also directly challenges the district court's likelihood of confusion findings. Specifically, AII argues that the court erred in the following ways: (1) it relied on a simple classification scheme and ignored evidence of exclusive use and widespread promotion in finding that "ACCURIDE" is a relatively weak trade name; (2) it underestimated the importance of the similarity factor by improperly taking into account the appearance of the stylized versions of the parties' corporate names; (3) it erroneously disregarded numerous examples of actual confusion in finding that the "anecdotal" incidents of confusion were insufficient to establish actual confusion; (4) it erred in finding that Accuride Corporation adopted the "ACCURIDE" name in good faith. AII contends that if the district court had properly analyzed those factors, it would have found that appellee's use of the "ACCURIDE" trade name creates a likelihood of confusion sufficient to establish a section 43(a) violation. We disagree. An analysis of the relevant factors leads us to conclude that the district court's finding of no likelihood of confusion is not clearly erroneous.

(1) *Strength of the Mark/Name*

■ The strength of a trademark or trade name is largely determined by its position on a continuum stretching from arbitrary marks to descriptive marks. *Rodeo Collection*, 812 F.2d at 1218. Arbitrary and fanciful marks are strong, while suggestive and descriptive marks are weak. *Century 21*, 846 F.2d at 1179; *J.B. Williams*, 523 F.2d at 192. The district court correctly concluded that the "ACCURIDE" name is merely suggestive of the goods produced by AII, and therefore not inherently strong.

■ A descriptive or suggestive mark may be strengthened by such factors as extensive advertising, length of exclusive use, public recognition and uniqueness. *See Century 21*, 846 F.2d at 1179 (evidence that Century 21 had expended several million dollars in advertising and that the mark had been used in connection with real estate sales in excess of one billion dollars relevant to finding that Century 21 is a strong mark). The district court did not address the impact of AII's advertising and sales, or the impact of its long-standing use of the "ACCURIDE" trade name. Nevertheless, we conclude that it did not err in determining that the "ACCURIDE" trade name is not a strong one. AII's advertising and sales are insufficient to convert "ACCURIDE" into a strong mark/name because of the parties' concurrent use of that term as a trademark. There is no evidence that the term "ACCURIDE," whether used as a trademark or trade name, is strongly and uniquely associated with AII's business. The district court correctly concluded that "ACCURIDE" is not a strong mark/name.

(2) *Proximity of Goods*

As the district court noted, the relevant purchasing public is more likely to be confused when the users of similar marks or names sell related goods. Because drawer slides and truck wheel rims are substantially different, the court correctly concluded that this factor mitigates against a finding of likelihood of confusion.

### (3) *Similarity of the Marks/Names*

The district court, applying the "sight, sound, and meaning" test of similarity outlined in *Sleekcraft*, determined that the names were identical in sound, but substantially different in appearance, thus reducing the possibility of confusion. AII urges that this view ignores significant trade name uses that do not involve the stylized versions of the name. It is in this context that AII's trade name/trademark distinction has the most force. It is true that the names themselves are identical and that the stylized designs will not appear in oral communications, newspaper typeface, and the like. The district court underestimated the impact of this factor in assessing the likelihood of confusion. However, in light of the other factors, this error does not undermine its ultimate conclusion.

### (4) *Actual Confusion*

AII presented the following evidence of actual confusion: (1) AII has been contacted on several occasions regarding "its" recent buyout (the buyout, of course, was of the Firestone Steel Products Division, the predecessor of Accuride Corporation); (2) on at least one occasion, merchandise and invoices intended for Accuride Corporation were delivered to AII; (3) AII field representatives have received phone calls intended for Accuride Corporation; (4) one person interviewing at AII thought it made truck wheels; (5) some individuals thought AII and Accuride Corporation were the same company. The district court concluded that the evidence presented on the actual confusion issue was anecdotal and too weak to support a finding of actual confusion. This conclusion is not clearly erroneous.

In *Alpha Industries*, 616 F.2d 440, this court was faced with Alpha Industries' challenge to the defendant's use of "ALPHA STEEL" as a trademark and trade name. The court upheld the district court's determination that evidence indicating that a purchaser of plaintiff's capital goods believed one of defendant's tubing businesses to be related to the plaintiff, coupled with evidence that a telex intended for the defendant was delivered to the plaintiff, were together insufficient to establish actual confusion. 616 F.2d at 444–45. Similarly, in *Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F.2d 1225, 1231 (3d Cir.1978), the court held that evidence of nineteen misdirected letters over four years is insufficient to establish actual confusion.

The evidence of actual confusion presented below does not differ significantly from that presented in *Alpha* and *Scott*. In addition, the evidence presented does not demonstrate the type of confusion that could affect the markets of either party. The district court did not err in finding that the evidence of actual confusion was relatively weak.

### (5) *Marketing Channels*

The district court found that AII's customers were furniture makers and the like, and that AII advertises in publications directed to the furniture and fixture trade. The appellee's customers are truck and trailer manufacturers. The parties do not attend the same trade shows, and their products are not sold by the same retailers or displayed in adjacent areas. The court correctly concluded that the marketing channels of the parties' goods do not overlap, and that this factor mitigates against a finding of likelihood of confusion.

### (6) *Likely Degree of Purchaser Care*

The district court found that ninety percent of defendant's products are marketed by a group of fifteen salespeople knowledgable about truck wheels and rims, and that plaintiffs' products are marketed by a group of approximately twenty technically trained personnel. In addition, it found that the purchasers of the parties' goods are highly specialized professional purchasers who would be expected to exercise a high degree of care in making their purchase decisions. This factor weighs heavily against finding a likelihood of confusion in the relevant purchasing population.

### (7) *Intent of Accuride*

The district court found that defendant's intent was to derive benefit from the goodwill associated with its longstanding use of the trademark "ACCU–RIDE," not to derive benefit from plaintiff's trade name. Thus, defendant adopted the name in good faith, and this factor was appropriately weighed in favor of a finding of no likelihood of confusion.

### (8) *Likelihood of Expansion of Product Lines*

The district court found that there is no evidence of intent of either party to expand into the others' line of business. Coupled with the fact that their goods are unrelated, this diminishes the likelihood of confusion.

The district court's ultimate conclusion that defendant's use of "ACCURIDE" as a trade name creates no likelihood of confusion is amply supported by the record.[6] Thus, AII's section 43(a) claim is without merit.[7]

### II. *AII's Dilution Claim*

■ AII contends that the district court erred in refusing to grant relief under California's anti-dilution statute, which reads in pertinent part as follows:

> Likelihood of injury to business reputation or of dilution of the distinctive quality of ... a trade name valid at common law, shall be a ground for injunctive relief notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

Cal.Bus. & Prof.Code § 14330(a). The district court found that appellee's use of "ACCURIDE" as a trade name created no likelihood of injury to AII's business reputation, and that AII's name was insuffi-

ciently distinctive to be subject to protection from dilution. We agree.

First, AII argues that the district court focused exclusively on dilution and simply failed to address the likelihood of injury to business reputation. This argument is not supported by the record. The district court specifically found that the mere possibility of product liability lawsuits is insufficient to establish a likelihood of harm to AII's business reputation. Thus, the district court did consider, and reject, the appellants' contention regarding the "injury to business reputation" prong of section 14330.

The district court's ruling is consistent with the appropriate legal standards. Injury to business reputation is typically invoked where the plaintiff's mark or name is tarnished or degraded through association with something unsavory. *See e.g., Coca–Cola Co. v. Gemini Rising, Inc.,* 346 F.Supp. 1183, 1191–92 (E.D.N.Y.1972) (court ordered relief under similar statute, prohibiting defendant's sale of "Enjoy Cocaine" posters with script and color similar to that of the Coca–Cola mark); *Dallas Cowboys v. Pussycat Cinema, Ltd.,* 604 F.2d 200, 203 (2d Cir.1979) (district court did not err in granting injunction under similar statute where defendant's advertisements and exhibit of "Debbie Does Dallas" involved use of uniforms substantially similar to those of the Dallas Cowboys cheerleaders). That sort of tarnishment or degradation of AII's name is not at issue here.

This case more closely resembles *Hyatt Corp. v. Hyatt Legal Services,* 736 F.2d 1153 (7th Cir.), *cert. denied,* 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 361 (1984). In *Hyatt,* the hotel chain sought injunctive relief under the Illinois Anti–Dilution Act against Hyatt Legal Services' use of the

---

**6.** In addition to the *Sleekcraft* factors, the district court also emphasized that the parties each used "ACCURIDE" as a trademark for twenty-five years without creating confusion in the marketplace. This concurrent trademark use provides further support for the view that appellee's adoption of the "ACCURIDE" name is unlikely to create confusion among the parties' customers.

**7.** AII's causes of action for statutory unfair competition under Cal.Bus. & Prof.Code § 17200 and for common law unfair competition are similarly dependent upon a showing of likelihood of confusion. *New West,* 595 F.2d at 1201. These claims were therefore also properly resolved in favor of Accuride Corporation.

Hyatt name. The Seventh Circuit ruled for the plaintiffs on the dilution prong, but was "unwilling to conclude that the mere possibility of a few malpractice claims against Hyatt Legal Services will result in harm to Hyatt Hotels' reputation." 736 F.2d at 1157 n. 2. Similarly, the mere possibility of product liability claims against Accuride Corporation for the manufacture of its wheel rims is insufficient to justify relief in this case.

■ AII's second challenge to the district court's ruling on the section 14330 claim concerns the court's finding that "ACCURIDE" is not sufficiently distinctive to merit protection under section 14330. It is clear that anti-dilution statutes such as this one are designed to protect only strong, well-recognized marks. *Toho Co. v. Sears, Roebuck & Co.*, 645 F.2d 788, 793 (9th Cir.1981); *Sykes Laboratory, Inc. v. Kalvin*, 610 F.Supp. 849, 858 (C.D.Cal.1985) ("[t]he dilution doctrine is only available to protect distinctive marks as exemplified by such famous names as 'Tiffany,' 'Polaroid,' 'Rolls Royce,' and 'Kodak' "). *See generally* Shire, *Dilution Versus Deception—Are State Antidilution Statutes an Appropriate Alternative to the Law of Infringement?*, 77 TRADEMARK REPORTER 273, 275–83 (1987).

The district court found that "ACCURIDE" was a suggestive term created by a combination of the descriptive terms "accurate" and "ride." Because the "ACCURIDE" name is merely suggestive, rather than coined or arbitrary, and because "Accu-" and "Ride" are used by many others in trade names and trademarks, the district court concluded that the "ACCURIDE" name is not sufficiently distinctive to merit protection under section 14330. The court also concluded that the parties' concurrent use of "ACCURIDE" as a trademark for twenty-five years effectively precluded a finding that the value of "ACCURIDE" trade name could be diluted.

AII asserts that the district court committed two errors. First, AII argues that the court should not have broken down the "ACCURIDE" name into its constituent parts for analysis of its distinctiveness. This circuit has held that a composite mark's strength should be determined with reference to the mark in its entirety, not piece by piece. *Rodeo Collection*, 812 F.2d at 1217; *California Cooler, Inc. v. Loretto Winery, Ltd.*, 774 F.2d 1451, 1455 (9th Cir. 1985). While the district court did refer to other parties' use of the prefix "ACCU–" and the suffix "RIDE" as an indication that the name was not distinctive, it was nevertheless entitled to find that the name is not distinctive solely on the basis that it is not a coined, arbitrary or fanciful term, but is merely suggestive, and has not acquired sufficient secondary meaning to be considered distinctive. *Sykes*, 610 F.Supp. at 858.

Second, AII contends that the "ACCURIDE" trade *name* is distinctive because only AII used "ACCURIDE" as a trade name before appellee's adoption of the name. Thus, AII urges this court to exclude the concurrent trademark use from the "distinctiveness" analysis. However, concurrent trademark usage of "ACCURIDE" undermines the distinctiveness of the "ACCURIDE" name no less than would concurrent trade name usage of that term. The district court was correct to deny the dilution claim.

## III. *AII's Trade Name Statute Claim*

■ Under the California Trade Name Statute, Cal.Bus. & Prof.Code §§ 14400–14416, the first entity to file articles of incorporation or to receive a certificate of incorporation, and use the corporate name set forth in the articles or certificate, is entitled to a presumption that it has an exclusive right to use that name within California.[8] Section 14402 provides for in-

---

8. According to Cal.Bus. & Prof.Code § 14415: The filing of articles of incorporation ... in the case of a domestic corporation, or the obtaining of a certificate of qualification ... in the case of a foreign corporation, shall establish a rebuttable presumption that the

corporation has the exclusive right to use as a trade name, in the state the corporate name set forth in the articles or certificate.... Section 14416 provides that, as between two corporations entitled to the rebuttable presumption created in § 14415, the first to file shall be

junctive relief for violations of the rights set out in the statute.[9]

In denying relief, the district court ruled that Accuride Corporation's proof of concurrent use of "ACCURIDE" as a trademark without objection and without confusion was sufficient to rebut the statutory presumption. AII contends that this was error, as § 14415 applies only to trade names, making concurrent trademark use irrelevant. However, the distinction urged by AII is contrary to *American Petrofina Inc. v. Petrofina of California, Inc.,* 596 F.2d 896 (9th Cir.1979), the only reported decision of this court construing the California Trade Name Statute. In *American Petrofina,* this court affirmed the district court's order enjoining the defendants from continuing to use "PETROFINA" or "FINA" as a trade name *or trademark.* 596 F.2d at 897. Although the court did not discuss the rationale for upholding the injunction with respect to the defendant's trademark use of "PETROFINA," its action was consistent with the terms of section 14402, which indicates that "any use" of a trade name in violation of the statute may be enjoined. This language is sufficiently broad to cover a subsequent user's trademark use as well as trade name use.

Taking into account the parties' use of "ACCURIDE" as a trademark, we agree with the district court's conclusion that the statutory presumption of exclusive use was rebutted. The appellants admit they were aware of Firestone's use of the "ACCURIDE" mark for a number of years. Moreover, the appellants are actually the junior user of the term.[10] These circumstances are sufficiently inconsistent with a right to exclusive use to rebut the section 14416 presumption. In the absence of this presumption, appellants cannot establish a basis for relief under the statute. The district court did not err in denying relief on the Trade Name Statute claim.

entitled to the presumption. In this case, it is undisputed that AII was the first to file in California under the "ACCURIDE" name.

**9.** Section 14402 reads: "Any court of competent jurisdiction may restrain, by injunction, any use of trade names in violation of the rights defined in this chapter."

## CONCLUSION

Appellants' Lanham Act and unfair competition claims fail because they failed to establish a likelihood of confusion arising from appellee's use of "ACCURIDE" as a trade name. The "ACCURIDE" trade name is insufficiently distinctive to merit protection against dilution, and appellants did not establish a likelihood of injury to business reputation. Finally, relief under the Trade Name Statute was properly denied because of the prior and concurrent trademark use of "ACCURIDE" by appellee and its predecessor.

AFFIRMED.

**10.** Firestone had been using "ACCURIDE" as a trademark for over thirteen years when the appellants adopted it as a trade name in 1972. Firestone was also the first user of the term as a trademark.