**PLATINUM HOME MORTGAGE CORPORATION, Plaintiff-Appellant,**

v.

**PLATINUM FINANCIAL GROUP, INCORPORATED, Defendant-Appellee.**

No. 97-3336.

United States Court of Appeals, Seventh Circuit.

Argued April 13, 1998.

Decided July 24, 1998.

Rehearing Denied Aug. 18, 1998.

Richard M. LaBarge (argued), Madeline Henricks Devereux, Marshall, O'Toole, Gerstein, Murray & Borun, Chicago, IL, for Plaintiff–Appellant.

James E. Mahoney, Ronald A. Rascia (argued), Griffith & Jacobson, Chicago, IL, for Defendant–Appellee.

Before BAUER, FLAUM, and DIANE P. WOOD, Circuit Judges.

BAUER, Circuit Judge.

Platinum Home Mortgage Corporation ("Platinum Mortgage") filed suit against Platinum Financial Group, Incorporated ("Platinum Financial") for unfair competition under Section 43 of the Lanham Act, 15 U.S.C. §§ 1125(a)(1)(A) and (B), for common law trademark infringement, and for deceptive trade practices under the Uniform Deceptive Trade Practices Act, 815 ILCS 510/1–7 (1996). Platinum Mortgage filed a motion for preliminary injunctive relief, requesting the district court to enjoin Platinum Financial from using the term "platinum" in its name. The district court denied the motion, and Platinum Mortgage now appeals. For the reason set forth below, we affirm.

## BACKGROUND

In January of 1994, Platinum Mortgage began to offer home mortgage services, including certain government-sponsored mortgage loans, and it currently maintains offices throughout Illinois in Aurora, Chicago, Libertyville, River Grove, Rolling Meadows, and also in the State of Colorado. In January of 1997, Platinum Financial began to offer various financial services, including limited mortgage services for the purpose of developing long-term strategies in financial planning, and currently its office is located in Lake Forest, Illinois. Platinum Financial does not provide, nor does it intend to provide the government-sponsored loans offered by Platinum Mortgage. Both firms have submitted that they have incurred various advertising costs and promotional expenses to publicize their businesses; of course, these advertisements and promotions use the word "platinum" to identify each company's services.

William Giambrone, the Chief Financial Officer for Platinum Mortgage, first became aware of Platinum Financial when he noticed an advertisement for its mortgage services in the Chicago Tribune. Giambrone objected to Platinum Financial's use of "platinum" and was concerned that consumers interested in obtaining a mortgage would be confused by the similarity of their names. Platinum Mortgage filed this suit against Platinum Financial on July 15, 1997 for unfair competition, common law trademark infringement, and deceptive trade practices, objecting to Platinum Financial's use of "platinum" in its name. Then, on August 1, 1997, Platinum Mortgage filed a motion for preliminary injunctive relief.

In a memorandum opinion and order issued on September 4, 1997, the district court refused to grant the preliminary injunction, finding that Platinum Mortgage does not have more than a negligible chance of success on the merits of its trademark infringement claim. First, the court determined that its trade name is merely descriptive, and second that it is quite unlikely Platinum Mortgage could show its name has acquired secondary meaning. Accordingly, the district court concluded that Platinum Mortgage would not be entitled to trademark protection for its trade name under the Lanham Act and, therefore, denied its motion for preliminary injunctive relief.

Platinum Mortgage filed a timely notice of appeal and now argues that the district court erroneously found that "platinum," as a trademark, is only descriptive when used in connection with its mortgage services. Again, Platinum Mortgage contends that its mark is suggestive and entitled to protection

without evidence of secondary meaning. Alternatively, Platinum Mortgage argues that even if evidence of secondary meaning is required, it nonetheless submitted substantial evidence of actual confusion that demonstrates "platinum" has acquired secondary meaning. With these facts as background, we now turn to the issues presented for review.[1]

## ANALYSIS

In reviewing the grant or denial of a preliminary injunction, we review a district court's findings of fact for clear error, its balancing of the factors of a preliminary injunction for an abuse of discretion, and its legal conclusions *de novo*. *Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.*, 128 F.3d 1111, 1114 (7th Cir.1997). The purpose of preliminary injunctive relief is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). When evaluating the merits of a motion for preliminary injunctive relief, a district court must determine whether the party seeking the preliminary injunction has demonstrated that: (1) it has a reasonable likelihood of success on the merits of its claim; (2) no adequate remedy at law exists; (3) it will suffer irreparable harm if preliminary injunctive relief is denied; (4) the irreparable harm it will suffer without preliminary injunctive relief outweighs the irreparable harm the nonmoving party will suffer if the preliminary injunction is granted; and (5) the preliminary injunction will not harm the public interest. *Rust Environment & Infrastructure, Inc. v. Teunissen*, 131 F.3d 1210, 1213 (7th Cir.1997). The threshold consideration in a motion for a preliminary injunction is the moving party's likelihood of success on the merits of the underlying claim. *Id.*

"Trademark law aims to aid consumers in identifying the source of goods by allowing producers the exclusive right to particular identifying words or symbols which they may attach to their products as a designator of source." *Thomas & Betts Corp. v. Panduit Corp.*, 65 F.3d 654, 657 (7th Cir. 1995). Accordingly, the protection afforded to a trademark attempts to prevent consumer deception and confusion. However, that trademark protection should not interfere with the traditional policies of a competitive market, and courts have generally recognized that the public substantially benefits from competition. *August Storck K.G. v. Nabisco, Inc.*, 59 F.3d 616, 619 (7th Cir.1995). In the context of a motion for a preliminary injunction in a trademark infringement claim, a likelihood of success exists if the party seeking the preliminary injunctive relief demonstrates that it has a "better than negligible" chance of succeeding on the merits of the underlying infringement claim. *Curtis v. Thompson*, 840 F.2d 1291, 1296 (7th Cir. 1988).

In a trademark infringement claim, the plaintiff must demonstrate: (1) the validity of its trademark; and (2) the infringement of that mark. *Echo Travel, Inc. v. Travel Associates, Inc.*, 870 F.2d 1264, 1266 (7th Cir.1989). The validity of a mark pertains to whether a "word, term, name, symbol or device," 15 U.S.C. § 1125(a)(1), is entitled to protection under trademark law by focusing on whether that mark specifically identifies and distinguishes one company's goods or services from those of its competitors. The infringement of a mark concerns whether the actions of a subsequent user of a substantially similar or identical mark causes a likelihood of confusion among consumers as to the source of those specific goods or services.

---

**1.** At this point in the opinion, we will reiterate a point emphasized by the district court. Although plaintiff has consistently described this action throughout its pleadings and briefs as one for trademark infringement, the actual subject of this dispute is the trade name of each party. The term "trademark" can be used in a broad and generic sense to denote the entire field of trademarks, service marks, trade names, and trade dress. Section 45 of the Lanham Act, 15 U.S.C. § 1127, defines "trade name" as "any name used

by a person to identify his or her business or vocation."

Although trade names and trademarks are distinct names and symbols, analogous actions for trade name and trademark infringement are properly asserted under § 43(a) of the Lanham Act. *Accuride Int'l, Inc. v. Accuride Corp.*, 871 F.2d 1531 (9th Cir.1989). In this opinion, we use "trade name" and "mark" interchangeably to refer to the subject in dispute.

*Echo Travel, Inc.*, 870 F.2d at 1266. When the identifying "word, term, name, symbol or device" claimed as a trade name or mark is not registered with the United States Patent and Trademark Office, the burden is on the claimant, Platinum Mortgage in the instant case, to establish that it is entitled to protection under § 43(a) of the Lanham Act. *Mil–Mar Shoe Co., Inc. v. Shonac Corp.*, 75 F.3d 1153, 1156 (7th Cir.1996).

 We initially recognize that there are various categories of terms and words that are entitled to trademark protection when consumers rely on those marks to identify and distinguish one company's goods or services from those of its competitors. Marks are classified into five categories of increasing distinctiveness: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, and (5) fanciful. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767–68, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). In general, the level of trademark protection available corresponds to the distinctiveness of the mark. *Id.* A generic term is one that is commonly used and does not identify any particular source and, therefore, is not entitled to any trademark protection. *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 936 (7th Cir.1986). A descriptive mark is one that "describes the ingredients, qualities, or characteristics of an article of trade or a service" and, generally, it is not protected as a trademark because a merely descriptive mark is a " 'poor means of distinguishing one source of services from another.' " *Id.* (quoting *M.B.H. Enters. v. WOKY, Inc.*, 633 F.2d 50, 54 (7th Cir.1980)). However, a descriptive mark may receive trademark protection if it acquires secondary meaning "in the collective consciousness of the relevant community." *Mil–Mar Shoe*, 75 F.3d at 1157 (citing *Gimix, Inc. v. JS & A Group, Inc.*, 699 F.2d 901, 907 (7th Cir.1983)). Finally, terms that are either suggestive, arbitrary, or fanciful are automatically entitled to trademark protection because they are inherently distinctive. *Two Pesos*, 505 U.S. at 767–68, 112 S.Ct. 2753.

 Platinum Mortgage first asserts that the district court clearly erred in finding that "platinum" is only descriptive of its services, arguing instead that the mark is suggestive and therefore entitled ..to full trademark protection. A district court's determination that a trademark is either descriptive or suggestive is a finding of fact that is reviewed for clear error. *Meridian Mut. Ins. Co.*, 128 F.3d at 1114. A finding of fact is clearly erroneous only if, based on the entire record, we are "left with the definite and firm conviction that a mistake has been committed." *Rust Environment*, 131 F.3d at 1216 (citations omitted). Accordingly, " '[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.' " *Id.* (quoting *Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423, 1429 (7th Cir.1985) (citation omitted)).

The district court first considered various uses of the word: (1) the general use and definition of "platinum" to indicate either a precious metal or quality and excellence; (2) the plaintiff's use of "platinum" as an alleged trade name or mark of its services; and (3) other businesses' use of "platinum" as a component in their trade names, both within the scope of the mortgage industry and beyond that profession to businesses not related to or connected with mortgage services. To identify the difference between descriptive and suggestive words and to appreciate the inherent distinctiveness of a suggestive mark as compared to one that is merely descriptive, the district court applied the "degree of imagination test" as articulated by this court in *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947 (7th Cir.1992):

> [I]f a mark imparts information directly it is descriptive. If it stands for an idea which requires some operation of the imagination to connect it with the goods, it is suggestive.

978 F.2d at 952. Ultimately, the district court concluded that "platinum" is only descriptive of Platinum Mortgage's services, finding that "the mental leap . . . is nearly instantaneous" and that it requires little imagination to associate "platinum" with superiority and quality service. *Platinum*

*Home Mortgage, Corp. v. Platinum Financial Group, Inc.*, No. 97 C 5293, 1997 WL 567909, at *3–4 (N.D.Ill. Sept. 4, 1997).

▓ We agree with the district court's conclusion that "platinum" is a "self-laudatory term" and that Platinum Mortgage is merely a descriptive trade name, *id.* at *4, and we find that the court's "account of the evidence is plausible in light of the record viewed in its entirety." *Anderson v. City of Bessemer City, North Carolina*, 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). In this instance, "platinum" describes the quality of plaintiff's mortgage services and suggests that it provides a superior service, but the word does not identify one particular source or designate the specific origin of those services without proof of secondary meaning. *See In re Omaha Nat'l Corp.*, 819 F.2d 1117 (Fed.Cir.1987). The record clearly supports the district court's finding that "platinum" is a weak mark and that "not much imagination is required to associate the term with any business." *Platinum Home Mortgage*, 1997 WL 567909, at *4. As such, the district court's determination is not clearly erroneous.

▓ In following course with its first argument that "platinum" is suggestive, on appeal Platinum Mortgage next argues that the district court clearly erred by requiring it to prove secondary meaning. Platinum Mortgage contends that the mark is protectable regardless of whether it acquires secondary meaning. However, this argument necessarily fails because, as discussed above, we agree with the district court's preliminary finding that "platinum" is only a descriptive term. *Id.* To be entitled to protection under trademark law, a claimant must demonstrate that its descriptive trade name has acquired secondary meaning that identifies the inherent distinctiveness of its mark. *Mil–Mar Shoe*, 75 F.3d at 1157. Secondary meaning refers to the manner in which a consumer identifies a specific business or a business's reputation by a particular trademark. *Vaughan Mfg. Co. v. Brikam Int'l, Inc.*, 814 F.2d 346, 348 (7th Cir.1987).

▓ To establish secondary meaning, a court may consider several factors to decide whether secondary meaning has been acquired or established:

(1) the amount and manner of advertising; (2) the sales volume; (3) the length and manner of use; (4) consumer testimony; and (5) consumer surveys. *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1085 (7th Cir.1988). A mark acquires secondary meaning when it has been used so long and so exclusively by one company in association with its products or services in that particular industry that the "word, term, name, symbol, or device" has come to mean that those products or services are the company's trademark. *Gimix, Inc.*, 699 F.2d at 907. Accordingly, Platinum Mortgage alternatively argues that the district court erroneously concluded that it is unlikely Platinum Mortgage could establish it has acquired secondary meaning. Specifically, Platinum Mortgage asserts that consumers associate "platinum" with its reputation and the mortgage services it offers and, therefore, has acquired secondary meaning. The district court's determination of secondary meaning is a finding of fact that is reviewed for clear error. *Meridian Mut. Ins. Co.*, 128 F.3d at 1114.

▓ The district court first noted that Platinum Mortgage did not submit any consumer testimony or consumer surveys to support its assertion that it has acquired secondary meaning. While not fatal to its request, the absence of that evidence weighs against Platinum Mortgage. Then, the court discussed Platinum Mortgage's advertising efforts and its public recognition, in addition to the length and manner of its use of the mark. The district court initially recognized that Platinum Mortgage has used its name for only three years, and then emphasized that a majority of the evidence indicates that most of its advertising and publicity did not begin until 1996. Although length of time by itself is not a determinative factor, *see Echo Travel*, 870 F.2d at 1264, the district court determined, after examining the evidence in its totality, that it is unlikely Platinum Mortgage could demonstrate that it has acquired secondary meaning and ultimately concluded that "there is no indication ... that the public has come to associate plaintiff's name

with its business or reputation." *Platinum Home Mortgage*, 1997 WL 567909, at *5.

■ We agree with the district court's conclusion that Platinum Mortgage's evidence of sales, advertising, and promotions, in the context of the minimal length of time involved, fails to indicate it could establish that it has acquired secondary meaning. Evidence of advertising and sales is entirely circumstantial, and that evidence does not necessarily indicate that consumers associate a mark with a particular source, particularly when the advertisements and promotions do not specifically emphasize the mark. *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1383 (9th Cir.1987). Accordingly, courts have found that this type of evidence may be insufficient to establish that a descriptive mark has acquired secondary meaning. *Spraying Systems Co. v. Delavan, Inc.*, 975 F.2d 387, 393 (7th Cir.1992). The record clearly illustrates that the district court considered sufficient, relevant factors to conclude that it is unlikely Platinum Mortgage could demonstrate it has acquired secondary meaning, and Platinum Mortgage does not persuade us that a mistake has been committed.

■ Platinum Mortgage then argues that even if it was not clear error for the district court to require evidence of secondary meaning, it nevertheless submitted compelling evidence of actual consumer confusion, and the district court erred as a matter of law by failing to consider that evidence. We recognize that the district court did not specifically analyze the evidence offered to show actual confusion. However, in accordance with the district court's conclusion, we also agree that consumer confusion does not exist within the scope of an infringement claim when the mark is not entitled to trademark protection. *Platinum Home Mortgage*, 1997 WL 567909, at *6. Nonetheless, we consider Platinum Mortgage's argument that the court erred by not examining its evidence of actual confusion.

■ As an initial matter, *de minimus* evidence of actual confusion does not necessarily establish a likelihood of consumer confusion. *Universal Money Centers v. Am. Tel. &. Tel. Co.*, 22 F.3d 1527, 1535 (10th Cir.1994). The evidence may indicate that consumers have a general knowledge that Platinum Mortgage provides mortgage services, but it fails to show that consumers identify "platinum" as the designator of a specific source. Also, evidence of actual confusion must refer to the confusion of reasonable and prudent consumers, and not confusion among sophisticated members of the mortgage service industry. *See, e.g., Estee Lauder, Inc. v. The Gap, Inc.*, 108 F.3d 1503 (2d Cir.1997); *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819 (9th Cir.1993). At this stage in the proceedings, we hesitate to conclude that Platinum Mortgage has sufficiently established it could demonstrate "platinum" has acquired secondary meaning. The record clearly demonstrates that the district court examined sufficient evidence to reasonably conclude that "platinum" has not acquired secondary meaning and therefore is not entitled to trademark protection, notwithstanding the evidence of actual confusion.

■ Finally, Platinum Mortgage argues that the district court failed to consider the additional factors required for the issuance of a preliminary injunction, and therefore, its denial of preliminary injunctive relief should be reversed. We review a district court's consideration of the elements of a preliminary injunction and its balancing of those elements for an abuse of discretion. *Meridian Mut. Ins. Co.*, 128 F.3d at 1114. Under an abuse of discretion standard, we will not second guess the decision of a district court judge that is " 'in conformity with established legal principles and, in terms of the court's application of those principals to the facts of the case, is within the range of options' " from which a reasonable trial judge would select. *Am. Nat'l Bank & Trust Co. of Chicago v. Reg'l Transp. Auth.*, 125 F.3d 420, 431 (7th Cir.1997) (quoting *United States v. Hamilton*, 19 F.3d 350, 354 n. 3 (7th Cir. 1994)).

■ In its memorandum opinion, the district court explained, albeit in a footnote, that in general, several of the elements a plaintiff must demonstrate to obtain preliminary injunctive relief are easily decided in the context of unfair competition and trade-

mark infringement. *Platinum Home Mortgage*, 1997 WL 567909, at *2 n. 1. In fact, Judge Zagel specifically identified a court hearing when he discussed with the parties some of those issues involved in Platinum Mortgage's request for a preliminary injunction. The district court cited Seventh Circuit cases that discuss, in the context of a preliminary injunction, (1) the lack of adequate remedies at law, (2) the inevitable harm that either party suffers by an adverse decision, and (3) the fundamental interest of the public, to support its conclusion that the grant or denial of preliminary injunctive relief ultimately pertains to Platinum Mortgage's likelihood of success in the underlying trademark infringement claim. *Id.*; *see also Int'l Kennel Club*, 846 F.2d at 1092; *August Storck*, 59 F.3d at 619. When the district court concluded that it was unlikely Platinum Mortgage could demonstrate it has acquired secondary meaning at this stage, the court denied the motion for preliminary injunctive relief. Without proof that "platinum" has acquired secondary meaning, Platinum Mortgage has failed to demonstrate the validity of its right to use Platinum Home Mortgage Corporation as a trade name.

With the present record, we agree with the district court's conclusion that Platinum Mortgage did not have more than a negligible chance to prevail on the merits of its claim. This conclusion does not suggest an abuse of discretion; instead, it obviated the need for the district court to continue further with its analysis. In the preliminary injunction context, where time is often of the essence, this court has emphasized that it is advisable for district courts to examine, if only briefly, all four preliminary injunction considerations. *Meridian Mut. Ins. Co.*, 128 F.3d at 1121. Such a practice expedites this court's review of the grant or denial of a preliminary injunction and protects the interests of the parties. *Id.* However, in accordance with our decision in *Ping v. Nat'l Educ. Ass'n*, 870 F.2d 1369 (7th Cir.1989), we also have recognized that a district court may decline to address the remaining elements of a preliminary injunction if a plaintiff fails to demonstrate a reasonable likelihood of prevailing on the merits of the underlying claim. 870 F.2d at 1371.

Accordingly, we find that the district court's examination of the necessary elements for a preliminary injunction, within the scope of an infringement claim and its application of the principals of trademark law, are reasonable and fall within the range of a district court's discretion and the available options from which a reasonable trial judge may select in the adjudication and ultimate resolution of those issues. *Am. Nat'l Bank & Trust Co. of Chicago*, 125 F.3d at 431. At this point in the case, the district court properly denied Platinum Mortgage's motion for a preliminary injunction. It may be that after a full trial seeking a permanent injunction, the record will support Platinum Mortgage's claim; the current record does not.

## CONCLUSION

We AFFIRM the district court's decision to deny the plaintiff's request for preliminary injunctive relief and REMAND to the district court with a recommendation that, to the extent practicable, the district court should expedite the proceedings in this matter.

DIANE P. WOOD, Circuit Judge, dissenting.

By the time Platinum Financial entered the Illinois home mortgage market, in January 1997, Platinum Mortgage had grown to be the third largest purveyor of government-backed home mortgages in the state, and had a thriving conventional mortgage practice as well. Armed not only with the commonsense notion that consumers might be confused by a new entrant sharing the distinctive term in its name but also with detailed evidence of that confusion in action, Platinum Mortgage brought suit to enjoin Platinum Financial's alleged infringement. I cannot agree with my colleagues' conclusion that Platinum Mortgage had no more than a negligible chance of establishing rights to its mark. See Majority Op. at 730; *Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.*, 128 F.3d 1111, 1114 (7th Cir.1997). My disagreement stems from a different view of the protectibility of trade names under the law; this view in turn leads me to conclude that the district

court abused its discretion in not issuing a preliminary injunction.

I agree with the majority that the term "Platinum" by itself could not be protected as suggestive; self-laudatory terms are a classic example of descriptive marks. *E.g., In re Bush Bros. & Co.*, 884 F.2d 569, 571–72 (Fed.Cir.1989) (*"Deluxe"*); *Murphy v. Provident Mut. Life Ins. Co.*, 923 F.2d 923, 927 (2d Cir.1990) (*"Hot"*); *France Milling Co. v. Washburn–Crosby Co.*, 7 F.2d 304, 306 (2d Cir.1925) (*"Gold Medal"*); 1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 11:17 (4th ed.1997) (hereinafter cited as "McCarthy"). While "Platinum" is not as obviously a description of the quality of a good (or here a company) as, say, "Deluxe," *Bush Bros.*, or "Plus," *Plus Products v. Plus Discount Foods, Inc.*, 722 F.2d 999, 1005 (2d Cir.1983), Judge Zagel quite rightly pointed out that what counts as merely an indication of quality can change over time, and the recent rash of credit cards designated "Platinum" underscores his finding.

As Judge Zagel held and the majority agrees, however, descriptive marks are protectable upon a showing that the mark had, by the relevant time, acquired a secondary meaning in the eyes of the appropriate audience. *Bush Bros.*, 884 F.2d at 570; *France Milling*, 7 F.2d at 306 (allowing protection of mark "Gold Medal" in pancake mix marketplace); *Mil–Mar Shoe Co. v. Shonac Corp.*, 75 F.3d 1153, 1156 (7th Cir.1996). Underlying the majority's belief that Platinum Mortgage failed to show more than a negligible likelihood of succeeding on the merits is its view that Platinum Mortgage had been in the mortgage business for too brief a time to permit its name to acquire secondary meaning. *E.g.*, Majority Op. at 728 (referring to the "minimal length of time involved"). But generalized statements of the necessary length of time are merely predictions about the world, predictions which can be nothing more than the worst sort of legal fiction. See 2 McCarthy § 15:55 (rules of thumb as to time necessary for secondary meaning to develop are "useless" and can be "dangerously misleading"). "With the advent of massive advertising campaigns on television and in national news magazines, a new trademark may achieve wide usage and 'secondary meaning' within a matter of days or weeks, compared to the many years required in the days of more leisurely advertising." 2 McCarthy § 15:56. Secondary meaning is a question of fact, *Meridian*, 128 F.3d at 1114, and notably absent from the majority's opinion are any facts which would support a finding that Platinum Mortgage could not possibly prove secondary meaning.

The record reflects that by the spring of 1997 Platinum Mortgage was the third largest offeror of government-backed mortgages in the state of Illinois and also a major issuer of conventional loans. It now has six offices, five in the Chicago metropolitan region. Since entering the business in 1994, Platinum Mortgage has closed more than 5900 mortgages totaling approximately $700,000,000. It focuses on mortgages for low- to moderate-income borrowers; one of its premier products is evidently the "Dream Loan," a residential housing mortgage under which the mortgagee need make no payments for a certain period of time after closing.

Between January 1994 and the commencement of this litigation, Platinum Mortgage incurred approximately $649,000 in promotional expenditures. Its main expense has been the construction and maintenance of a large constantly illuminated billboard on a major highway west of Chicago. This billboard was erected in mid–1995, not, as the district court mistakenly thought, 1996. The billboard cost over $150,000 to construct, and it costs over $2,000 per month to maintain and operate. Platinum Mortgage also advertises throughout the Chicago region, has a web site, and appears at trade shows. It stresses that it never advertises specific mortgage rates, because it believes that doing so is problematic and potentially misleading to consumers given the volatility of the modern mortgage market.

Platinum Financial commenced operations in January 1997. It aims primarily at a different clientele than Platinum Mortgage—middle- to upper-middle income clients. According to its president, it provides only "conventional first mortgage services to its clients," and does not originate government-

backed loans. Platinum Financial does advertise specific rates, among other places in the Chicago Tribune; the record does not include its total advertising budget, but it spends in excess of $5,000 per month on advertising. By August 1997, Platinum Financial had closed 29 loans totaling just under $6,000,000, 19 of which were for previous clients of Platinum Financial's president or personal referrals. Platinum Financial learned of Platinum Mortgage's existence in December 1996, before it (that is, Platinum *Financial*) commenced operations, and acknowledges it never consulted a lawyer to discern whether it had the right to use the term "Platinum" in its name.

It is Platinum Financial's advertisements which most directly show that the similarity between the names of Platinum Mortgage and Platinum Financial caused confusion. By the time Judge Zagel held the preliminary injunction hearing in this case, 25 different people had called Platinum Mortgage, inquiring about the rates advertised by Platinum Financial, despite the fact that those advertisements included Platinum Financial's telephone number. But that is not the only evidence of confusion in the record. Platinum Financial acknowledged receiving at least five telephone calls derived from people seeing Platinum Mortgage's large billboard. Finally, real estate professionals have also confused the two companies, on at least three occasions either sending checks and bills to or telephoning the wrong firm.

Factors we commonly look to in order to show that a term has acquired secondary meaning "include the amount and manner of advertising, volume of sales, the length and manner of use, direct consumer testimony, and consumer surveys." *International Kennel Club v. Mighty Star, Inc.*, 846 F.2d 1079, 1085 (7th Cir.1988). With the exception of direct consumer testimony, these are all indirect routes towards the real question—whether, in the mind of the relevant customer base (which here may be the public, real estate professionals, or both, *cf. Centaur Communications, Ltd. v. A/S/M Communications, Inc.*, 830 F.2d 1217, 1221–22 (2d Cir.1987); *Lon Tai Shing Co. v. Koch + Lowy*, 19 U.S.P.Q.2d 1081, 1087 (S.D.N.Y.

1990)), the word "Platinum" has come to be associated, in the mortgage industry, with Platinum Mortgage. See *International Kennel Club*, 846 F.2d at 1085–86.

No one disputes that secondary meaning in the trade name context is governed by the same legal standards as in the trademark arena. *E.g.*, 1 McCarthy § 9:2; *Accuride Int'l, Inc. v. Accuride Corp.*, 871 F.2d 1531, 1534 (9th Cir.1989) (primary distinction between trade names and trademarks is that trademarks are registrable); *Country Floors Inc. v. Partnership Composed of Gepner and Ford*, 930 F.2d 1056, 1064 n. 2 (3d Cir.1991). The standard must be framed slightly differently in the trade name context, however. Descriptive trademarks are commonly said to have developed secondary meaning when an association has developed "in the mind of the consumer between the trade dress or name of a product and a particular producer." *International Kennel Club*, 846 F.2d at 1085; *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 163, 115 S.Ct. 1300, 131 L.Ed.2d 248 (1995) (" '[S]econdary meaning' is acquired when 'in the minds of the public, the primary significance of a product feature ... is to identify the source of the product rather than the product itself.' "), quoting *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 851 n. 11, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982) (omission in *Qualitex*). Absent hypothetical situations involving the interrelation of linked corporations, when a trade *name* develops secondary meaning, it is not identifying the corporation with a particular product or entity. Rather, when one says a descriptive trade name has acquired secondary meaning one means that the relevant consumer pool knows of that corporation and has come to understand that, for example, "Pizza Hut," is not the name of just any pizza restaurant but rather a specific purveyor of pizza. (Pizza Hut may not be a trade name given its corporate ownership, but works well as an example nonetheless.) See *Self–Realization Fellowship Church v. Ananda Church of Self–Realization*, 59 F.3d 902 (9th Cir.1995) ("A trademark represents the mark holder on 'the vendible commodity to which it is affixed,' while a trade name symbolizes 'a business and its goodwill.' "), quoting *American Steel Foundries v. Robert-*

*son,* 269 U.S. 372, 380, 46 S.Ct. 160, 70 L.Ed. 317 (1926). "In the case of a trade name, secondary meaning is 'the power of a name ... to symbolize a particular business.'" *Perini Corp. v. Perini Construction, Inc.,* 915 F.2d 121, 125 (4th Cir.1990), quoting *Ideal Toy Corp. v. Kenner Products Div'n of General Mills Fun Group, Inc.,* 443 F.Supp. 291, 305 n. 14 (S.D.N.Y.1977). The existence of other entities using a similar name in unrelated industries is only marginally relevant to the determination of whether a trade name has developed secondary meaning, although it may affect the strength of the mark, likelihood of confusion, or scope of relief. *Cf. National Cable Television Ass'n v. American Cinema Editors, Inc.,* 937 F.2d 1572, 1579 (Fed.Cir.1991); *France Milling,* 7 F.2d at 306 ("[O]ne who takes a phrase which is the commonplace of self-praise like 'Blue Ribbon' or 'Gold Medal' must be content with that special field which he labels with so undistinctive a name.") (allowing protection of "Gold Medal" pancake mix, but limiting protection to the pancake mix industry); 2 McCarthy § 15:27.

In finding that Platinum Mortgage had no more than a negligible chance of showing that the term "Platinum" had developed a secondary meaning—that is, that consumers had come to understand that the name "Platinum" referred to "Platinum Home Mortgage Corporation" within at least the local mortgage industry—the district court acknowledged that the lack of consumer surveys or testimony was not fatal, and acknowledged evidence of Platinum Mortgage's advertising and sales volume (though it understated both because of its mistaken belief that Platinum Mortgage's billboard was erected in 1996 and its impression that Platinum Mortgage had earned only "several hundred million dollars" in closings, as opposed to the $700,000,000 the record showed). It found fatal to Platinum Mortgage's claim the fact that its trade name was too new, and refused to consider Platinum Mortgage's evidence of actual confusion, believing this irrelevant to the existence of a protectable trademark.

Actual confusion logically *must* be an indication of at least some amount of secondary meaning. See *Adray v. Adray–Mart, Inc.,* 76 F.3d 984, 987 (9th Cir.1995); 2 McCarthy § 15:11; *Perini,* 915 F.2d at 125. "[I]f buyers are confused, then this also means that they must have recognized plaintiff's word as a trademark and associated it only with the plaintiff." 2 McCarthy § 15:11. The majority's statement that "consumer confusion does not exist within the scope of an infringement claim when the mark is not entitled to trademark protection," Majority Op. at 729, is circular. While it is true that if no secondary meaning exists (and thus there is no "mark entitled to trademark protection") consumer confusion cannot follow, *Sno–Wizard Mfg., Inc. v. Eisemann Products Co.,* 791 F.2d 423, 427 n. 5 (5th Cir.1986) (quoting McCarthy), the converse is not true: consumer confusion is direct evidence of the existence of a protectable mark. *Adray,* 76 F.3d at 987, citing *American Scientific Chem. v. American Hosp. Supply,* 690 F.2d 791, 793 (9th Cir. 1982).

In the trade name and trademark context we consistently have held that a plaintiff has a "reasonable likelihood for success on the merits," for purposes of a motion for preliminary injunctive relief if she has a "'better than negligible' chance of succeeding on the merits." *Meridian,* 128 F.3d at 1114, quoting *International Kennel Club,* 846 F.2d at 1084. I believe the district court clearly erred in finding that Platinum Mortgage had no better than a negligible chance of success on the merits. Given the ignored evidence of actual confusion, the excessive weight placed on the length of time Platinum Mortgage has been in business, and the understatements regarding advertising expenditures and sales, I am left with a "definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer,* 470 U.S. 564, 565, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985), quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

The majority correctly holds that given the district court's decision on likelihood of success its succinct discussion of the remaining factors to consider for injunctive relief was not inherently an abuse of discretion. Majority Op. at 730, citing *Ping v. National Educ. Ass'n,* 870 F.2d 1369, 1371 (7th Cir.

1989). Given my disagreement on the plaintiff's likelihood of demonstrating that it has a valid mark, I note that, while Platinum Mortgage articulated to this court reasons why the remaining considerations relevant to injunctive relief favored the granting of its requested injunction, Platinum Financial did not address these factors and thus it has waived at this stage any argument that those other factors support the district judge even if he erred on the likelihood of success. *Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277, 300 n. 9 (7th Cir.1998). In my view, it is likely that Platinum Mortgage's name has been infringed given the similarity in name and business and the evidence of actual customer confusion, *see Meridian*, 128 F.3d at 1115 (listing factors relevant to infringement). The district court itself stated that it believed Platinum Mortgage lacked an adequate remedy at law and that the balance of harms favored it.

The district court thought that the public interest favored the defendant here because denying protection to Platinum Mortgage's trade name would somehow "preserve competition." But this reveals a fundamental misunderstanding of the way intellectual property rights like trademarks and trade names help the competitive process. There is nothing inherently anticompetitive about intellectual property rights, as courts and commentators alike have come to recognize. *E.g., Qualitex*, 514 U.S. at 163–64, 115 S.Ct. 1300; William M. Landes & Richard A. Posner, *Trademark Law: An Economic Perspective*, 30 J.L. & Econ. 265 (1987); United States Dept. of Justice & Federal Trade Commission, Antitrust Guidelines for the Licensing of Intellectual Property (Apr. 6, 1995). Companies need a way to capture their investments in good will and reputation, and one important way they do so is to develop a trade name. Free riding by a newcomer on the first company's name, and hence investment, does not help competition any more than competition is helped when free riders disrupt a manufacturer's distribution strategy. Finally, as we have recognized in the past, "in trademark infringement cases ... the relevant consideration in determining whether the public interest will be disserved by the grant of an injunction is the

consumer's interest in not being deceived about the products they purchased." *International Kennel Club*, 846 F.2d at 1092 n. 8.

For these reasons, I believe that the district court's refusal to grant Platinum Mortgage its preliminary injunction was an abuse of discretion. I therefore respectfully dissent.