In the

# United States Court of Appeals
## For the Seventh Circuit

No. 07-1997

EAGLE SERVICES CORP.,

*Plaintiff-Appellee,*

*v.*

H2O INDUSTRIAL SERVICES, INC., *et al.,*

*Defendants-Appellants.*

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:02-CV-36—**Paul R. Cherry**, *Magistrate Judge.*

ARGUED MAY 29, 2008—DECIDED JULY 9, 2008

Before CUDAHY, POSNER, and TINDER, *Circuit Judges.*

POSNER, *Circuit Judge.* The Copyright Act authorizes a court to award a reasonable attorney's fee to the prevailing party in a copyright suit. 17 U.S.C. § 505. The defendants prevailed but the district court refused to award them attorney's fees, and they have appealed.

The plaintiff, Eagle, is in the business of cleaning up contaminated sites. The four individual defendants left their employment with Eagle to form their own company (the corporate defendant, H2O) to compete with Eagle.

Eagle has a copyrighted safety manual. The copyright is a compilation copyright, 17 U.S.C. §§ 101 ("compilation"), 103(b), as the manual consists mostly of quotations from OSHA regulations; the provenance of the remaining text of the manual is unclear. Suspecting that the individual defendants had taken the manual with them when they left to form their own company and had made copies of it, Eagle sent two people to H2O in the guise of prospective customers to request H2O's safety manual, and, sure enough, they were shown copies of Eagle's manual. H2O later prepared its own manual, and other than the two Eagle spies no prospective customer of H2O was ever shown the Eagle manual. Thus the defendants derived no profits from the alleged copyright infringement—or so one would think; but Eagle argued that without a manual, H2O could not provide any services without violating OSHA regulations, and therefore that Eagle should be entitled to recover, on a theory of restitution, all the profits that H2O made in its business before it created its own manual. Eagle acknowledged that it could not prove actual damages and that it was not entitled to statutory damages.

The district court allowed the case to go to the jury. But after Eagle rested its case the court granted the defendants' motion for judgment as a matter of law, as no evidence had been presented that either the Occupational Safety and Health Act or the regulations under it require companies that the Occupational Safety and Health Administration regulates to have a safety manual—safety standards, yes, 29 C.F.R. § 1910.2(f), and instructions in safety, § 1926.21; see *Danis-Shook Joint Venture XXV v. Secretary of Labor*, 319 F.3d 805, 812-13 (6th Cir. 2003); *Valdak Corp. v. OSHRC*, 73 F.3d 1466, 1469 (8th Cir. 1996),

but not a manual, though that is a useful element of a safety program. See *P. Gioioso & Sons, Inc. v. OSHRC*, 115 F.3d 100, 110 (1st Cir. 1997). Moreover, had Indiana tried to shut down H2O for a violation of the Occupational Safety and Health Act or a regulation issued under it (the Act is enforced in Indiana by the state, pursuant to 29 C.F.R. § 1952.324(b)-(c)), it would have had to give H2O a grace period within which to comply. Ind. Code § 22-8-1.1-25.1(a)(3). H2O could easily have complied by creating its own compilation of OSHA regulations; and if it failed to do so, still the state could not shut it down without first obtaining a judicial order. Ind. Code §§ 4-21.5-6-6, 22-8-1.1-35.6. The process would take years. *LTV Steel Co. v. Griffin*, 730 N.E.2d 1251, 1255-56 (Ind. 2000); *Union Tank Car, Fleet Operations v. Commissioner of Labor*, 671 N.E.2d 885, 887-88 (Ind. App. 1996). Creating a safety manual would take days, or less, since fully customized OSHA safety manuals are available for purchase, at prices ranging from about $250 to $300, from OSHA Source, LLC, www.safetymanualexperts.com; from OSHA Compliance Group, Inc., www.safetymanual.com/; from DigitalREG, www.safetymanualpro.com/ ("With the click of a mouse button and for only $269.99 you can have a completely customized, OSHA compliant safety manual in as little as 24 hours") (all visited June 13, 2008); and from other vendors as well.

There has been no determination of whether Eagle's copyright is valid. The defendants argue that it is not because little of the material in the manual is original. But while for the most part the manual does just reproduce OSHA regulations, the manual's sequencing of them is original—there is not just a single sequence that every OSHA safety manual would have to follow—and there is

other text in the manual as well, though it may have been copied from works in the public domain. We shall assume that Eagle's compilation copyright is valid. *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 348-50, 357-59 (1991); *Assessment Technologies of WI, LLC v. WIREData, Inc.*, 350 F.3d 640, 643 (7th Cir. 2003). The assumption does not affect our decision.

The district court refused to award attorney's fees, on the ground that the suit was not frivolous and had not been filed in bad faith and that the standards for what the parties call an "indirect profits" suit are vague. The court was wrong on all three counts, but even if it had been right it would not have been justified in refusing to award fees.

It is apparent that the suit was filed in order to cramp the style of a competitor and perhaps warn off any other employee of Eagle who might have the temerity to set up in competition with it. Eagle engaged in extensive discovery that included deposing all of H2O's customers and a number of its prospective customers as well; the defendants claim without contradiction that as a result H2O lost many customers.

The suit could not have been brought in good faith because Eagle never had any basis for thinking that Indiana would have shut down H2O had H2O not copied Eagle's manual. And not only for the reasons that we have explained already, but for another: if a manual had been required by law and H2O had not copied Eagle's manual, then, given how simple it is to create a manual by copying OSHA regulations or buying a customized manual, H2O, rather than abandoning its business for want of a manual would have prepared or pro-

cured another manual post haste—at some expense, to be sure, but, as we know, a trivial one; unsurprisingly, recovery of the negligible profit that H2O made by avoiding for a time that trivial expense is not sought by Eagle.

So the suit was frivolous even if there was a copyright violation. When a plaintiff is just suing for money and he has no ground at all for obtaining a money judgment, the fact that his rights may have been violated does not save his suit from being adjudged frivolous. *Durr v. Intercounty Title Co.*, 14 F.3d 1183, 1188 (7th Cir. 1994); *Compaq Computer Corp. v. Ergonome Inc.*, 387 F.3d 403 (5th Cir. 2004); *Devices for Medicine, Inc. v. Boehl*, 822 F.2d 1062, 1063, 1068-69 (Fed. Cir. 1987); *Olympia Co. v. Celotex Corp.*, 771 F.2d 888, 893 (5th Cir. 1985). At least this is true in a case in which there is no right to nominal damages, and there is none in a copyright suit. 6 William F. Patry, *Patry on Copyright* § 22:124, p. 297 (2008). (*Compaq Computer Corp. v. Ergonome Inc.*, *supra*, was such a suit.) Eagle's only remedial theory was that H2O would have had to shut down had it not copied Eagle's manual; and the theory was groundless.

The only uncertainty is whether, if Eagle *had* proved that H2O would have shut down had it not copied Eagle's manual, it could have obtained the profits that H2O obtained as a result of not having to shut down. It is doubtful that profits from the sale of noninfringing goods or services (in this case, H2O's clean-up services) can be attributed to a copyright infringement with enough confidence to support a judgment. 6 Patry, *supra*, § 22:131, pp. 312-15; cf. *MindGames, Inc. v. Western Publishing Co.*, 218 F.3d 652, 658 (7th Cir. 2000); *Compaq Computer Corp. v. Ergonome Inc.*, *supra*, 387 F.3d at 412; *Polar Bear*

*Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 709-10 (9th Cir. 2004); *Mackie v. Rieser*, 296 F.3d 909, 916 (9th Cir. 2002).

The reason for allowing the copyright holder to choose between the damages caused by the infringement and the infringer's profits is that otherwise a more efficient competitor would have an incentive to infringe because its profit would exceed its victim's loss, with the result that capping relief at damages would create in effect a compulsory-licensing scheme, the damages to the copyright holder being the license fee. *Bucklew v. Hawkins, Ash, Baptie & Co., LLP*, 329 F.3d 923, 931 (7th Cir. 2003); *Taylor v. Meirick*, 712 F.2d 1112, 1120 (7th Cir. 1983); *Walker v. Forbes, Inc.*, 28 F.3d 409, 415 n. 7 (4th Cir. 1994); Roger D. Blair & Thomas F. Cotter, *Intellectual Property: Economic and Legal Dimensions of Rights and Remedies* 59, 67 (2005). There is nothing like that here. H2O was not trying to obtain customers or otherwise profit from Eagle's manual. At worst, had it needed the manual to avert being forced to shut down (which it didn't), it avoided a business disaster by infringing. Suppose it would have been forced into bankruptcy had it not infringed. Then Eagle would be seeking by way of restitution a sum of money large enough to bankrupt H2O. In other words, for want of a nail the kingdom was lost. We doubt that so unattractive a basis for a legal judgment was intended by Congress when it authorized restitution as a remedy for copyright infringement.

So we have a suit brought almost certainly in bad faith, a frivolous suit, a suit against a newer and probably smaller and weaker firm. Under any standard we know for shifting attorney's fees from a losing plaintiff to a winning defendant, H2O (and the individuals joined as defendants along with it) would be entitled to an award

of attorney's fees. E.g., *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258 (1975); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991); *IDS Life Ins. Co. v. Royal Alliance Associates, Inc.*, 266 F.3d 645, 654 (7th Cir. 2001). Under the standard for such shifting in a copyright case, the defendants' entitlement is even stronger. The Supreme Court in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994), said that, unlike the rule in an employment discrimination case, where the plaintiff is presumptively entitled to his attorney's fees if he wins but the defendant only if the suit was frivolous, in copyright suits "prevailing plaintiffs and prevailing defendants are to be treated alike." That is why we concluded in *Assessment Technologies of WI, LLC v. WIREData, Inc.*, 361 F.3d 434, 437 (7th Cir. 2004), that "when the prevailing party is the defendant, who by definition receives not a small award but no award, the presumption in favor of awarding fees is very strong." See also *Mostly Memories, Inc. v. For Your Ease Only, Inc.*, No. 06-3560, 2008 WL 2168642, at *5 (7th Cir. May 27, 2008); *Riviera Distributors, Inc. v. Jones*, 517 F.3d 926, 927-29 (7th Cir. 2008); *Woodhaven Homes & Realty, Inc. v. Hotz*, 396 F.3d 822, 824 (7th Cir. 2005). The conclusion is implicit in the Supreme Court's directive in *Fogerty* to treat the parties to a copyright case symmetrically. If the only thing disturbing the symmetry is that the defendant prevailed, it is presumptively entitled to an award of its reasonable attorney's fees. Here, of course, the presumption is not rebutted, but instead is reinforced, by the considerations that we have reviewed.

Yet *Murray Hill Publications, Inc. v. ABC Communications, Inc.*, 264 F.3d 622, 640 (6th Cir. 2001), disregarding *Fogarty*, says (and is not alone in saying) that "because we believe the plaintiffs presented one or more colorable, albeit

meritless, claims to the district court, we reverse the award of attorneys fees" to the defendant. Such decisions (criticized in 6 Patry, *supra*, § 22:210, pp. 469-70), by treating a copyright case as if it were an employment discrimination case, ignore the symmetry of interests in a copyright or other intellectual property case. In the typical copyright case a victory for the defendant enlarges the public domain by denying the plaintiff's right to prevent the defendant—or anyone else—from using the intellectual property alleged to infringe the plaintiff's copyright. The public domain is "an important resource for creators of expressive works and therefore there should be no thumb on the scales" in deciding whether to award attorneys' fees. *Gonzales v. Transfer Technologies, Inc.*, 301 F.3d 608, 609 (7th Cir. 2002); see also *Assessment Technologies of WI, LLC v. WIREData, Inc.*, *supra*, 361 F.3d at 436.

If there is an asymmetry in copyright, it is one that actually favors defendants. The successful assertion of a copyright confirms the plaintiff's possession of an exclusive, and sometimes very valuable, right, and thus gives it an incentive to spend heavily on litigation. In contrast, a successful defense *against* a copyright claim, when it throws the copyrighted work into the public domain, benefits all users of the public domain, not just the defendant; he obtains no exclusive right and so his incentive to spend on defense is reduced and he may be forced into an unfavorable settlement.

This case is atypical, because the defendants did not succeed in forcing the plaintiff's manuals into the public domain. But there is nothing in the cases to suggest that the thumb is to be taken off the scales only when a defendant by his successful defense enlarges the public

domain. That would be cutting things too fine. The presumption in a copyright case is that the prevailing party (though if it is the plaintiff, only if his copyright had been registered, 17 U.S.C. § 412; *Budget Cinema, Inc. v. Watertower Associates*, 81 F.3d 729, 733 (7th Cir. 1996)) receives an award of fees. *Gonzales v. Transfer Technologies, Inc.*, *supra*, 301 F.3d at 610; see also *Hogan Systems, Inc. v. Cybresource Int'l, Inc.*, 158 F.3d 319, 325 (5th Cir. 1998); *McGaughey v. Twentieth Century Fox Film Corp.*, 12 F.3d 62, 65 (5th Cir. 1994). The presumption has not been rebutted.

The judgment is therefore reversed and the case remanded with instructions to compute and award reasonable attorney's fees to the defendants.