In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 20-2506

LHO CHICAGO RIVER, L.L.C.,

*Plaintiff-Appellee,*

*v.*

ROSEMOOR SUITES, LLC, PORTFOLIO HOTELS
& RESORTS, LLC, and CHICAGO HOTEL, LLC,

*Defendants-Appellants.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 16 C 6863 — **Charles P. Kocoras**, *Judge.*

---

ARGUED FEBRUARY 10, 2021 — DECIDED FEBRUARY 19, 2021

---

Before MANION, KANNE, and ROVNER, *Circuit Judges.*

KANNE, *Circuit Judge.* Chicago is home to two hotels named "Hotel Chicago." Some years ago, the operator of one Hotel Chicago—LHO Chicago River, L.L.C. ("LHO")—sued the operators of the other Hotel Chicago—Rosemoor Suites, LLC, and associated entities ("Rosemoor")—for trademark infringement and related claims. LHO dropped its case in February 2018, but a dispute over attorney fees rages on.

The district court denied Rosemoor's first request for fees in 2018. Rosemoor appealed, and we remanded with instructions for the district court to apply the standard announced by the Supreme Court in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014). On remand, the district court denied Rosemoor's renewed request for fees, and Rosemoor appealed again. We now consider whether the district court erred in denying Rosemoor's fee request a second time.

We conclude that it did not. The district court heeded our instruction to apply the *Octane Fitness* standard and reasonably exercised its discretion in weighing the evidence before it. We therefore affirm the district court's denial of Rosemoor's renewed motion for attorney fees.

## I. BACKGROUND[1]

LHO owns a hotel in downtown Chicago that it rebranded as "Hotel Chicago" in 2014. Two years later, Rosemoor renamed its existing hotel, in the west side of the city, as "Hotel Chicago."[2] In June 2016, LHO sued Rosemoor for trademark infringement and unfair competition under the Lanham Act

---

[1] We note that Rosemoor's so-called Statement of the Case is really just ten pages of argument. This does not comply with Federal Rule of Appellate Procedure 28, which requires "a concise statement of the case" that "set[s] out the facts relevant to the issues submitted for review, describ[es] the relevant procedural history, and identif[ies] the rulings presented for review, with appropriate references to the record." "Argument is not allowed in a brief's recap of a case's procedure or facts." *United States v. Blagojevich*, 612 F.3d 558, 560 (7th Cir. 2010).

[2] The "Hotel Chicago" owned by LHO is located downtown in the River North area of Chicago at 333 N. Dearborn Street. The "Hotel Chicago" owned by Rosemoor is located over three miles away in Chicago's West Loop area at 1622 W. Jackson Boulevard.

and for deceptive advertising and common-law trademark violations under Illinois law. LHO also moved for a preliminary injunction based on its trademark infringement claim.

The motion for a preliminary injunction was referred to Magistrate Judge Susan E. Cox, who recommended that the court grant the motion because LHO showed a likelihood of success on the merits. Among other things, Magistrate Judge Cox concluded: (1) that LHO was "very likely to prove that it has priority over [Rosemoor] regarding the relevant trademark"; (2) that, because LHO's trademark probably has "secondary meaning"—which means that "most consumers think of the term as the name of the product instead of as descriptive of the product," *SportFuel, Inc. v. PepsiCo, Inc.*, 932 F.3d 589, 599 (7th Cir. 2019) (first citing *Sorensen v. WD-40 Co.*, 792 F.3d 712, 723 (7th Cir. 2015); and then citing *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 639 (7th Cir. 2001))—it was "extremely unlikely that [Rosemoor] will prove that LHO's trademark is generic"; and (3) that LHO had "a strong chance of proving that there is a likelihood of confusion between the two hotels."

Rosemoor objected to the report and recommendation, and District Judge Charles P. Kocoras held an evidentiary hearing to resolve the objection. In February 2017, Judge Kocoras denied preliminary injunctive relief. He agreed with Magistrate Judge Cox in all but one of her conclusions: that the "Hotel Chicago" mark was likely to have acquired secondary meaning. Rather, Judge Kocoras found that "LHO has failed, at this juncture, to show that it is likely to succeed in proving secondary meaning"—and therefore was unlikely to show that "Hotel Chicago" was a protectable trademark.

LHO initially appealed the district court's decision but moved to voluntarily dismiss its claims with prejudice before briefing. The district court granted LHO's motion and entered judgment for Rosemoor in February 2018.

Three months later, Rosemoor requested more than $500,000 in attorney fees, arguing that fees were warranted under the Lanham Act because this case qualifies as "exceptional." Judge Kocoras denied the request in April 2019 under the "abuse-of-process" standard from *Burford v. Accounting Practice Sales, Inc.*, 786 F.3d 582 (7th Cir. 2015). Rosemoor appealed that decision and argued that the district court should have applied the test announced in *Octane Fitness*, 572 U.S. 545, to determine whether the case was exceptional.

We agreed that the district court should have evaluated Rosemoor's attorney-fee request under *Octane Fitness* and "instruct[ed] district courts analyzing such requests to examine the 'totality of the circumstances' and exercise their 'equitable discretion' in light of the factors and considerations identified in *Octane* [*Fitness*]." *LHO Chi. River, L.L.C. v. Perillo*, 942 F.3d 384, 388–89 (7th Cir. 2019) ("*LHO I*") (quoting *Octane Fitness*, 572 U.S. at 554). We thus remanded the case for that purpose.

In February 2020, Rosemoor filed a renewed request for more than $630,000 in fees. It argued that, considering the weakness of LHO's position on the merits, LHO's motives in bringing suit, and its conduct in discovery, this case was exceptional under *Octane Fitness*. In July 2020, Judge Kocoras denied the renewed request after finding that Rosemoor had not met its burden under *Octane Fitness*. Rosemoor appealed.

## II. ANALYSIS

The Lanham Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). In *Octane Fitness*, the Supreme Court addressed an identical provision of the Patent Act, 35 U.S.C. § 285, and held that:

> [A]n "exceptional" case is simply one that stands out from others with respect to [1] the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or [2] the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances.

572 U.S. at 554.

Five years later—in this case—we abandoned *Burford*'s abuse-of-process test and confirmed that the *Octane Fitness* "standard should apply in the present context of the Lanham Act." *LHO I*, 942 F.3d at 387. We also reiterated what sorts of considerations can inform this analysis: "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 386 (quoting *Octane Fitness*, 572 U.S. at 554 n.6).

### A. Proper Standard of Review Under Octane Fitness

In the previous appeal, "[t]o guard against future confusion," we made clear that our review of a district court's decision to deny attorney fees under the Lanham Act "is one of abuse of discretion." *Id.* at 386 n.3; *accord BASF Corp. v. Old*

*World Trading Co.*, 41 F.3d 1081, 1099 (7th Cir. 1994) ("A decision to award attorneys' fees under the Lanham Act is firmly committed to the district court's discretion … .").

But despite our clarity in this very case, Rosemoor remains confused. Rosemoor presses for *de novo* review on the ground that the district court did not, in fact, apply *Octane Fitness* on remand. Rather, Rosemoor brazenly contends that the experienced district judge fell back into old habits by applying *Burford*'s now-defunct abuse-of-process test.

That argument is specious. Any question about whether the district court applied *Burford* instead of *Octane Fitness* is answered by a flip through its memorandum opinion, which cites our abandonment of the abuse-of-process standard; thoroughly articulates the framework announced in *Octane Fitness*; and structures its analysis around the two prongs of the *Octane Fitness* standard: "I. Substantive Strength of Litigation Position" and "II. Unreasonable Manner of Litigation."

To argue otherwise, Rosemoor primarily relies on the district court's treatment of what Rosemoor calls a "damming [sic] email" that was sent by LHO's vice president in 2013, three years before this case was filed. That email states, in part: "As you know, because we cannot trademark the name Hotel Chicago, our best protection is to start using it to build name equity." The district court concluded that "this evidence does not foreclose the possibility that LHO had a good-faith belief that it acquired secondary meaning for the mark in the time since the email" was sent. Rosemoor claims that this statement reveals that the district court (1) erroneously applied a "foreclose the possibility" evidentiary standard, rather than the proper "preponderance of the evidence" standard,

and (2) erroneously applied a "bad faith" standard, which *Octane Fitness* rejected.

These arguments are without merit. The district court twice stated that Rosemoor had to "prove that this case is exceptional by a preponderance of the evidence," and it determined that that one email was simply not as "damming" as Rosemoor claims.[3] As the court explained, the email "does not directly show the motivations of LHO management at the time the suit was brought because [it] was from years before the litigation was commenced."

And the court did not apply a bad-faith standard, either. It did not require Rosemoor to prove that LHO acted in bad faith, but considered whether LHO had an "improper motive," whether the suit was "brought for an improper purpose," whether there was "litigation misconduct," whether LHO "was unreasonable in negotiations," and whether any of LHO's conduct was "so egregious and reprehensible as to make the case 'stand out' from others and merit fee-shifting." This was a proper application of our and the Supreme Court's instructions that courts consider "the … manner in which the case was litigated." *Octane Fitness*, 572 U.S. at 554.

---

[3] We note that there is some question about whether "preponderance of the evidence" is even the right evidentiary standard under *Octane Fitness*, which is not especially clear on that point. 572 U.S. at 557–58 ("Section 285 demands a simple discretionary inquiry; it imposes no specific evidentiary burden, much less such a high one. Indeed, patent-infringement litigation has always been governed by a preponderance of the evidence standard, and that is the 'standard generally applicable in civil actions' … ." (citation omitted) (quoting *Herman & MacLean v. Huddleston*, 459 U.S. 375, 390 (1983))). No party here argues that a different standard applies, however, so we have no reason to reach the issue.

Naturally, part of that inquiry is whether a party acted in bad faith. *Octane Fitness* makes clear that "a case presenting either *subjective bad faith* or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." 572 U.S. at 555 (emphasis added) (citing *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 771 F.2d 521, 526 (D.C. Cir. 1985)). So bad faith remains relevant even if it's not required. *See also LHO I*, 942 F.3d at 386 (explaining that "motivation" is a relevant factor). A district court's reference to a party's good or bad faith therefore does not show that the court ignored *Octane Fitness*. To the contrary, where the court treats bad faith as a factor rather than a requirement (as the district court did here), it shows just the opposite.

And so we end up where we started: we review the district court's decision for an abuse of discretion. We thus "will not disturb the district court's finding 'if it has a basis in reason.'" *Holmstrom v. Metro. Life Ins. Co.*, 615 F.3d 758, 779 (7th Cir. 2010) (quoting *Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574, 592 (7th Cir. 2000)). What matters is not what we might have decided if we were sitting in the district judge's shoes, but "whether any reasonable person could agree with the district court." *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 563 (7th Cir. 1984). To reverse, we must find an erroneous conclusion of law, a record that contains no evidence rationally supporting the court's decision, or facts that are clearly erroneous as the district court found them. *Id.* at 564. This is a deferential standard; "[w]hen a district court exercises its discretion to deny fees as a result of its subjectively superior understanding of the litigation, we routinely affirm the decision of the district court." *Jaffee v. Redmond*, 142 F.3d 409, 412 (7th Cir. 1998).

The question now becomes whether Rosemoor gives us cause to depart from that routine here.

*B. Application of* Octane Fitness

To recap, a case can be "exceptional" if the court determines, under the totality of the circumstances, that it "stands out from others with respect to [1] the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or [2] the unreasonable manner in which the case was litigated." *Octane Fitness*, 572 U.S. at 554. We analyze these two considerations in turn.

*1. Strength of LHO's Litigating Position*

The court need not consider any inflexible set of elements to determine whether the factual or legal weaknesses of a party's litigating position make a case exceptional. Relevant considerations at least include "frivolousness" and "objective unreasonableness." *LHO I*, 942 F.3d at 386 (quoting *Octane Fitness*, 572 U.S. at 554). With these factors in mind, we conclude that the district court did not abuse its discretion in finding that LHO's litigating position was not exceptionally weak because there was ample evidence to support that conclusion.

To start, the magistrate judge determined that LHO was likely to succeed on the merits of its claims and recommended granting its motion for a preliminary injunction. True, the district judge ultimately disagreed, but we think the mere fact that two experienced judges disagreed on the same motion is "significant evidence that the pleading was not frivolous or unreasonable." *Indianapolis Colts v. Mayor & City Counsel of Baltimore*, 775 F.2d 177, 182 (7th Cir. 1985); *see Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1041 (9th Cir. 1990) ("Logic and

fairness dictate that where two judges disagree, attorney's fees should not be awarded … for bringing a frivolous case.").

Second, Rosemoor itself filed two intent-to-use applications for the "Hotel Chicago" mark. This undermines Rosemoor's contentions that that mark was plainly unworthy of protection and that LHO's claim to a protectable mark in that name was frivolous.

Third, LHO provided evidence of actual confusion from seventeen customers, and Rosemoor admitted that confused travelers have called its hotel thinking they were talking to someone at LHO's hotel. "[T]here can be no more positive or substantial proof of the likelihood of confusion than proof of actual confusion," and "while very little proof of actual confusion would be necessary to prove the likelihood of confusion, an almost overwhelming amount of proof would be necessary to refute such proof." *Int'l Kennel Club of Chi., Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1089 (7th Cir. 1988) (quoting *World Carpets, Inc. v. Dick Littrells New World Carpets*, 438 F.2d 482, 489 (5th Cir. 1971)).

Fourth, both the magistrate and district judges found that LHO "provided evidence of significant, widespread marketing efforts, global promotion, and sales volume to demonstrate the mark had acquired secondary meaning."

And fifth, a party who fails to obtain preliminary injunctive relief may yet succeed on the merits because "[a] preliminary injunction is an extraordinary remedy." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The district court recognized as much even while denying preliminary injunctive relief: "It may be that after a full trial the record will support LHO's claim." So the denial of LHO's request for a

preliminary injunction is not particularly strong evidence that its case was exceptionally weak.

Despite this evidence, Rosemoor argues that the district court got its conclusion wrong to the point that it abused its discretion. These arguments are unpersuasive.

Rosemoor argues that this litigation is exactly like *Platinum Home Mortgage Corp. v. Platinum Financial Group, Inc.*, 149 F.3d 722 (7th Cir. 1998), in which we affirmed the district court's finding that the plaintiff failed to establish secondary meaning for its descriptive mark. Rosemoor contends that, in light of *Platinum*, it is "impossible to conceive of a weaker case" than LHO's. Indeed, Rosemoor goes so far as to argue that LHO could be subject to Rule 11 sanctions for simply filing this lawsuit (though, if that's the case, one wonders why Rosemoor never bothered seeking such sanctions).

It's true that the state of "the governing law" can inform whether a case is exceptional. *Octane Fitness*, 572 U.S. at 554. But Rosemoor puts too much stock in *Platinum*. That a single oldish case disfavored a claim similar to LHO's does not make LHO's case "stand out" from others. Precedent is distinguished and departed from all the time (and we've even been known to overrule a case now and then!). It is a rare plaintiff who has *no* "bad law" to contend with, and the presence of one "bad case" does not turn an ordinary uphill battle into Pickett's Charge. That's especially true when the issue is whether a descriptive mark has acquired secondary meaning, a question of fact that rests on "several factors" to be analyzed on a case-by-case basis. *See Platinum*, 149 F.3d at 728.

Rosemoor's other arguments are equally unavailing.

(1) Rosemoor focuses on LHO's lack of consumer surveys supporting its claim. But the lack of consumer surveys is "not fatal." *Id.* Nor is it "feasible to require a Lanham Act plaintiff to conduct full-blown consumer surveys in the truncated timeframe between filing suit and seeking a preliminary injunction." *Eli Lilly & Co. v. Arla Foods, Inc.*, 893 F.3d 375, 382 (7th Cir. 2018).

(2) Rosemoor emphasizes that LHO lacked a registered trademark for "Hotel Chicago" and thus was not entitled to the presumptions of ownership, validity, and enforceability. But those are *presumptions*; there is no rule that claims based on unregistered trademarks are frivolous *per se*. *See Johnny Blastoff, Inc. v. L.A. Rams Football Co.*, 188 F.3d 427, 435 (7th Cir. 1999) ("Infringement of unregistered marks is actionable under the Lanham Act.").

(3) Rosemoor argues that it formed an entity called "Chicago Hotel, LLC." But "Chicago Hotel, LLC" is not "Hotel Chicago," a mark over which the district court found that LHO likely had priority. And as the district court explained, that Chicago Hotel, LLC, registered "Hotel Chicago" as a dba merely shows an intent to use the mark, not rights to it. *See Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 504 (7th Cir. 1992).

(4) Rosemoor argues that LHO's past registration of other trademarks "is evidence (meeting the preponderance of the evidence standard) that [LHO], by not filing for trademark protection [for the "Hotel Chicago" mark], knew protection was not available." Rosemoor cites no support for this assertion—which, in any event, is undermined by its own, more recent applications for the same mark.

(5) Rosemoor argues that when the district court addressed its request for fees, the court "ignored" its own words from the preliminary-injunction stage, where it had stated that LHO's effort to prove secondary meaning was "an uphill battle" for which LHO "has yet to enlist." We think the court was just stating the obvious: that it's difficult to prove secondary meaning at the preliminary injunction stage, before all the evidence is marshaled. We doubt that the court was portending that LHO's case was exceptional, then changed its mind.

We conclude that the district court acted within its discretion in weighing these facts and finding that LHO's litigating position was not so weak as to warrant fee shifting.

### 2. LHO's Litigation Conduct

Rosemoor also argues that this case is exceptional because of "the unreasonable manner in which the case was litigated." *Octane Fitness*, 572 U.S. at 554. Here, we consider factors such as LHO's "motivation" and "the need in particular circumstances to advance considerations of compensation and deterrence." *LHO I*, 942 F.3d at 386. The district court found that LHO's litigation conduct did not justify fee shifting. We agree.

Rosemoor advances scattershot arguments, all of which were reasonably rejected by the district court. Rosemoor again points to the 2013 email to show that LHO knew that its case was bunk from the beginning. The district court rejected this argument because it found that the evidence of LHO's marketing budget and advertising efforts, plus the passage of time between the email and the filing of the complaint, showed that LHO reasonably believed it had developed protectible trademark rights. That was not an abuse of discretion.

Rosemoor also complains that LHO offered no evidence of its own to show that it had conducted sufficient pre-filing investigation. Rosemoor forgets that LHO bore no evidentiary burden on Rosemoor's request for attorney fees. It was up to Rosemoor to prove that LHO engaged in exceptional litigation misconduct, and its evidence failed to persuade the district court. LHO's strategic decision to tear down Rosemoor's evidence rather than pile up its own does not make the district court's decision an abuse of discretion.

Finally, Rosemoor claims four examples of LHO's unreasonable conduct in litigation: (1) LHO's improper naming of Joseph Perillo as a defendant (Perillo was later dropped); (2) its conduct in discovery; (3) its initial appeal from the denial of the preliminary injunction, and (4) its refusal to grant Rosemoor a covenant not to sue.

The district court specifically considered and rejected each one of these arguments (despite Rosemoor's contention that the court "glossed over" them). The court determined that (1) "LHO show[ed] that it had reason to believe that Perillo may have been involved"; (2) "[w]hile [some of LHO's] actions [in discovery] were certainly bad, we do not believe they are so egregious and reprehensible to make the case 'stand out' from others and merit fee-shifting"; (3) "LHO was entitled to appeal the denial of the preliminary injunction as a matter of right"; and (4) "the evidence does not show litigation misconduct by LHO with respect to the covenant-not-to-sue." Rosemoor disagrees with how the district court weighed the evidence, but discretion to weigh the evidence within the bounds of reason is exactly what a totality-of-the-circumstances test entails. We see no abuse of discretion in the district court's disposal of these arguments.

We therefore conclude that the district court did not abuse its discretion in finding that LHO's litigation conduct did not rise to the level necessary to make this case exceptional.

### III. Conclusion

Perhaps there is a reasonable way to weigh the facts in Rosemoor's favor. Perhaps there's not. We only need to decide if any reasonable person could agree with the district court's conclusion. We think most would. The district court considered the evidence under the *Octane Fitness* framework and reasonably determined that this case did not qualify as exceptional. It thus did not abuse its discretion in denying Rosemoor's renewed request for attorney fees. We AFFIRM.