In the

# United States Court of Appeals

## For the Seventh Circuit

_____

Nos. 23-1527 & 23-2566

UIRC-GSA HOLDINGS, LLC,

*Plaintiff-Appellant,*

*v.*

WILLIAM BLAIR & COMPANY, L.L.C., and MICHAEL KALT,

*Defendants-Appellees.*

_____

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15-cv-9518 — **Robert W. Gettleman**, *Judge.*

_____

ARGUED OCTOBER 26, 2023 — DECIDED JANUARY 12, 2024

_____

Before FLAUM, BRENNAN, and KIRSCH, *Circuit Judges.*

BRENNAN, *Circuit Judge.* UIRC-GSA Holdings acquires and manages properties occupied by the U.S. government. William Blair is a financial services company. Blair was helping UIRC with a bond offering when a third company undertook a similar offering. Both UIRC and the third company used certain documents during the offering process. UIRC showed Blair its documents, which UIRC had copyrighted. When UIRC learned that Blair was involved in the similar offering,

UIRC sued Blair for copyright infringement. Blair prevailed at summary judgment and the district court awarded Blair attorneys' fees under the Copyright Act. UIRC now appeals, arguing the district court erred when it ruled that UIRC lacked the requisite originality for valid copyrights in the documents and by awarding fees to Blair.

UIRC did not independently draft much of the text in the documents, and the new text it drafted consists entirely of uncopyrightable material. The district court was correct to grant Blair's summary judgment motion, and that court did not abuse its discretion by awarding Blair fees.

## I. Background

UIRC acquires and manages properties leased to the U.S. General Services Administration. To acquire these properties, UIRC needs to raise money. But finding outside sources of capital is challenging for UIRC, as government-occupied rental property presents unique risks. For example, although the government is unlikely to fail to pay its rent, it often occupies an entire building; if it decides to leave, the building empties immediately.

UIRC came up with a strategy to pool a dozen GSA properties, use the pool as security for a bond, then offer the bond to the market. By spreading the risks out across numerous properties, UIRC hoped the bonds would present a more appealing investment opportunity.

To facilitate the offering, UIRC produced two documents: a private placement memorandum (PPM) and an indenture of trust. PPMs advertise the bonds; trust indentures govern the bond issuer's relationship with anyone who buys them. UIRC did not draft these offering documents from scratch.

One of UIRC's lawyers emailed UIRC executives a copy of offering documents prepared by the Idaho Housing and Finance Association ("Idaho"). The UIRC executives then used language from the Idaho documents in their own drafts.

When UIRC's first transaction closed in the summer of 2012, UIRC submitted the corresponding PPM and indenture of trust to the U.S. Copyright Office. The Copyright Office asked UIRC to clarify which parts of the bond documents reflected "the author's original text or substantial revisions to the preexisting text," noting that courts have limited copyrights in contractual agreements that way. UIRC clarified it wanted a copyright only in the "additional and revised text" it drafted, not the "standard legal language." The Copyright Office approved the application with the limiting language.

After a second, less successful, offering, UIRC decided to hire a placement agent to help it market the bonds. Enter William Blair. Blair worked with UIRC on the third and fourth transactions. UIRC also copyrighted the additional and revised text in, as relevant here, the fourth transaction's associated offering documents.

But trouble ensued. While Blair and UIRC were working on the fifth transaction, another company hired Blair to draft bond documents and find investors for a similar transaction. According to UIRC, the bond documents the third party used were strikingly similar to UIRC's documents from the first and fourth transactions. They were so similar, in fact, that references to UIRC remained in the final documents.

When UIRC learned about the similar transaction, it sued. Among its claims, UIRC alleged Blair copied original portions of the first and fourth sets of UIRC's offering documents,

infringing its copyrights in violation of the Copyright Act, 17 U.S.C. §§ 101 *et seq.*

After discovery, Blair and UIRC moved for summary judgment. The district court granted Blair's motion, deciding that UIRC's offering documents could not be subject to copyright protection. Key to the district court's decision was that UIRC's documents were "incredibly similar" to the Idaho documents. And the non-trivial language UIRC added—facts, short phrases, and functional language—could not be copyrighted.

After final judgment, Blair as the prevailing party moved to recover its attorneys' fees, permitted under 17 U.S.C. § 505. The district court applied the factors the Supreme Court endorsed for § 505 fees motions in *Fogerty v. Fantasy, Inc.*, concluding at least three of the four factors weighed toward Blair. *See* 510 U.S. 517, 534 n.19 (1994). So, the district court granted Blair's motion.

UIRC filed separate appeals from the summary judgment and fees orders, which we have consolidated for consideration and decision.

## II. Copyrightability

A plaintiff must prove two elements to establish copyright infringement. First, he must demonstrate he owns "a valid copyright." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Second, he must show the defendant copied "constituent elements of the work that are original." *Id.* Because we resolve UIRC's claim on the first element, we do not discuss the second.

The Constitution empowers Congress to "secur[e] for limited Times to Authors … the exclusive Right to their

respective Writings … ." U.S. CONST. art. I, § 8, cl. 8. Congress has exercised this copyright power, restricting the exclusive right of protection to "original works of authorship fixed in any tangible medium of expression … ." 17 U.S.C. § 102(a) (2023).

To qualify for copyright protection, a work must be original to the author. *Feist*, 499 U.S. at 345. Originality is the glue holding copyright law together. An original work is one the author "independently created" and "possesses at least some minimal degree of creativity." *Id.* But originality cannot bind everything. Ideas, methods of operation, concepts, and the like, no matter how independent and creative, are not copyrightable. *See, e.g.*, 17 U.S.C. § 102(b).

UIRC did not independently create most of the language in the documents at issue. Instead, it copied much of the language from the Idaho materials. We agree with the district court that the language UIRC did draft lacks the creative expression required for copyright protection. It is either facts, fragmented phrases, or language dictated solely by functional considerations.

## A.

To support a valid copyright, a writing must be independently created. *Feist*, 499 U.S. at 345. There must be "sufficient nontrivial expressive variation" in the writing in question, so as "to make it distinguishable from [an] underlying work in some meaningful way." *Schrock v. Learning Curve Int'l, Inc.*, 586 F.3d 513, 521 (7th Cir. 2009)[1]; *see Nova Design*

---

[1] *Schrock* is a derivative-use case. *See id.* at 518. When an author combines "preexisting material in which copyright subsists" and some "material contributed by the author," the author's additions can support a

*Build, Inc. v. Grace Hotels, LLC*, 652 F.3d 814, 818 (7th Cir. 2011). Outright copying, thus, obviates originality. *Feist*, 499 U.S. at 345.

Independent creation is a short hurdle, but it still matters. For example, consider photographs of Thomas & Friends train characters, which this court held were distinguishable from the characters themselves. *Schrock*, 586 F.3d at 522. The photographer's "angle, perspective, lighting, and dimension" supplied the variation making them copyrightable. *Id.* The copyright was "narrow," but it was a copyright nonetheless. *Id.*

An influential treatise uses a different visual art form—painting—to explain distinguishable variation. *See* 1 NIMMER ON COPYRIGHT § 2.01(A)(1). Suppose an art student creates a master copy of a Rembrandt. His canvas mirrors the original to the last brushstroke (an artistic accomplishment on its own). But "he has not produced anything that 'owes its origin' to him … ." *Id.* (quoting *Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 58 (1884)). Authorship is what copyright demands. *Id.*

Or, consider the Supreme Court's tale of two poets. *See Feist*, 499 U.S. at 345–46. "[E]ach ignorant of the other," they write identical poems. *Id.* at 346. Both are copyrightable even though neither is novel. Unlike the Rembrandt imitator, the

---

copyright. 17 U.S.C. § 103(a), (b) (2023). We do not discuss that nook of copyright law here. Instead, we end the analysis by holding that UIRC's copyright is invalid. Regardless, for purposes of independent creation, the fact that *Schrock* is a derivative-use case is not important—"the originality requirement for derivative works is not more demanding than the originality requirement for other works … ." 586 F.3d at 521.

poets have established authorship by creating something entirely of their own.

UIRC and Idaho are unlike these two poets. UIRC has admitted to knowing the Idaho documents existed. And if Idaho is Rembrandt, UIRC is the art student: much of the language UIRC highlights in its copyrighted documents is indistinguishable from language Idaho created.[2] Where they differ, most of UIRC's nuances are "[]trivial … variations," wholly unlike the toy photographer's perspective and lighting. *Schrock*, 586 F.3d at 521.

Consider three highlighted sections from UIRC's documents. First, UIRC highlighted Article V, Section 5.01 in its indenture of trust for the fourth bond offering. The only differences (besides formatting) between Section 5.01 in Idaho's indenture of trust and that same section in UIRC's document are nine substitutions of "Project" for "Properties"; a change from "Borrower" to "Issuer"; and a new clause reading, "and initial funding of reserves for the Bonds." Even the section number is the same.

Second, in the final PPM for its fourth offering, UIRC highlighted Sections 3(b), 4, and 5 (among others) under "Pledge of Trust Estate." Again, UIRC uses the highlighter to lasso every word composing these paragraphs. But here UIRC made only one change to Idaho's version: it ended section 5 with a period, and Idaho used a semicolon.

Third, consider the "Application of Revenues" sections—specifically, the paragraphs of UIRC's PPM for its first

---

[2] In its filings in the district court, UIRC used a highlighter to indicate the copyrighted sections of its documents.

transaction concerning the order of payments. In this section, UIRC describes how the trustee will distribute money to the various accounts or funds and for what purposes and how the trustee and issuer can use the remaining money. UIRC explains it had to draft the payment flow exactly as it did to assure bondholders that "problems at one of the … properties would not materially affect" their security. Idaho has a similar section. As UIRC explains it, this is the most important aspect of its bond structure. Although this is perhaps UIRC's best claim to originality, it still fails. *See also infra* II(B).

The trivial variations persist in the version of the Application of Revenues section in the PPM for UIRC's first transaction. In one paragraph, UIRC deletes one deadline; switches out "following" for "after" and "with" for "in"; and swaps a second deadline with its own. In another paragraph, it simply replaces "Expense Fund" with "Administrative Expense Fund" and "S&P" with "NAIC."

Small variations aside, UIRC did contribute new, substantive material to this Application of Revenues section. Rather than disqualify the whole document, copyright law may still protect what UIRC contributed. *Nova Design Build*, 652 F.3d at 818; *Pickett v. Prince*, 207 F.3d 402, 405 (7th Cir. 2000); *Merritt Forbes & Co. Inc. v. Newman Inv. Sec., Inc.*, 604 F. Supp. 943, 951, 953 (S.D.N.Y. 1985) (considering copyrightability of a bond document, but denying summary judgment motion because originality is genuine issue of material fact, and explaining that "new elements" of a copied work are the only ones "protected by copyright").

In *Nova Design Build, Inc. v. Grace Hotels*, a design company claimed that a hotel conglomerate infringed its copyrights in its architectural designs. 652 F.3d at 815–16. Grace Hotels and

Nova had agreed to work together on a new Holiday Inn Express, with Nova supplying the designs. *Id.* at 815. The agreement fell apart, and, after Grace built the hotel, Nova sued, alleging Grace used its designs anyway. *Id.* at 816. This court sided with Grace. *Id.* at 818. Nova's designs were generally based on the Holiday Inn Express prototype. But some of its designs contained "added features," such as an extra floor, which lacked originality. Other features "were specifically requested by Grace." The court concluded that "there was no creative element to these features" warranting copyright protection. *Id.*

This is the approach we take here. UIRC cannot use the highlighter to make Idaho's contributions disappear. But copied language does not *de facto* taint the whole work. Thus, we next consider whether the Copyright Act can protect the uncopied material.

**B.**

After excising the copied language, what remains is a mixture of fragmented phrases, facts, and language dictated solely by functional considerations. Fragmented phrases and facts are not copyrightable. *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 547 (1985) (facts); *Alberto-Culver Co. v. Andrea Dumon, Inc.*, 466 F.2d 705, 711 (7th Cir. 1972) (short phrases and expressions). Language dictated solely by function is not copyrightable either. *Publ'ns Int'l, Ltd. v. Meredith Corp.*, 88 F.3d 473, 480, 481 (7th Cir. 1996).

As above, we return to the Application of Revenues sections of the PPM for UIRC's first transaction. Some of UIRC's more substantive contributions are facts or fragmented phrases. For example, it replaced some of Idaho's language

with "Mortgage," "Assignment of Lease," and "Collateral Assignment of Rents" in a list of legal documents in the opening paragraph of the section. Elsewhere, it added the phrase "the Loan Agreement obligates the Borrower to (and the Issuer shall cause the Borrower to)" to Idaho's language in the first paragraph of the section. Other contributions are more substantial. For example, although UIRC used some of Idaho's language for the payment order section discussed above, UIRC re-sequenced the paragraphs, creating a different order. And the order matters.

But here, and wherever UIRC made substantive additions, it was not creative expression. Rather, UIRC was responding to the demands of function. Two key cases illustrate how functional additions differ from creative additions.

First, in *Publications International, Ltd. v. Meredith Corp.*, a publisher argued that it had a copyright in a series of recipes, but the recipes amounted to a list of ingredients and step-by-step instructions for making the dishes. *See* 88 F.3d at 475, 480. This alone could not support a valid copyright. *Id.* at 480. Without any "expressive elaboration upon [their] functional components," the recipes were "barebones," nothing more than "the directions for producing a certain dish." *Id.* at 480, 481; *see* 1 NIMMER, *supra*, § 2A.13. Considering the definition of a "recipe," this court concluded that, at its most fundamental, a recipe is an uncopyrightable "'procedure, process, [or] system.'" *Publ'ns Int'l.*, 88 F.3d at 481 (quoting 17 U.S.C. § 102(b)) (alteration in original). Had the publisher commented on the history of the recipe or provided wine pairings, for example, it could copyright the recipe. *See id.*

So too here. UIRC included no expressive elaborations, choosing instead to present its idea to potential investors with

the formal technicality common to bond documents. Bond documents are, at their foundation, barebones descriptions of the offering and terms and conditions. *See, e.g., Prospectus,* BLACK'S LAW DICTIONARY (11th ed. 2019); *Indenture/corporate indenture,* BLACK'S LAW DICTIONARY (11th ed. 2019).[3] Without any elevating creativity, the documents consist of little more than an uncopyrightable "method of operation" or "process." 17 U.S.C. § 102(b) (2023).

UIRC gives some insight into its drafting process. Even though there were other ways UIRC could explain the payment of order flows provision, it wrote the provision exactly as it did to assure bondholders that their security would be safe. For example, when the second bond offering was less successful, UIRC cited "changes it made to its bond documents."

An author's decision to phrase things one way may in some cases be evidence of creative expression. In *American Dental Ass'n v. Delta Dental Plans Ass'n,* for example, the creativity in a taxonomy of dental procedures was the author's classification and explanation after "the fundamental scheme ha[d] been devised." 126 F.3d 977, 979 (7th Cir. 1997). But in *American Dental,* and unlike here, functional demands did not constrain the taxonomist's prosaic choice.

In the second key case, *Incredible Technologies, Inc. v. Virtual Technologies, Inc.,* this court rejected a copyright infringement

---

[3] See also *Boyle v. Stephens, Inc.,* No. 97 Civ. 1351 (SAS), 1998 WL 80175, at *5 (S.D.N.Y. Feb. 25, 1998) ("[P]laintiff's copyright does not preclude others from also describing … fund characteristics … . Otherwise, plaintiff could prevent competitors from fully describing the mutual fund concept in a prospectus or other selling materials … .").

claim in the markings on an arcade cabinet's control panel. 400 F.3d 1007, 1014, 1013 (7th Cir. 2005). Incredible Technologies made the Golden Tee arcade game. *Id.* at 1009. Virtual Technologies decided to make a competing arcade game— PGA Tour Golf. *Id.* Virtual Technologies wanted to make a game very similar to Golden Tee. *Id.* at 1010. So it purchased a Golden Tee cabinet and hired a firm to design a game that could fit seamlessly within IT's preexisting system. PGA Tour Golf's control panel, unsurprisingly, turned out "nearly identical" to Golden Tee's. *Id.* The panels consisted of a trackball in the center (a "golfer" "swings" by rolling it), arrows around the trackball, a horizontal graphic demonstrating flight paths (indicating the direction the "ball" would move), five buttons around the trackball, and textual instructions. *Id.* at 1010, 1013.

This court ruled that IT's control panel was not subject to copyright protection because practical, non-creative reasons governed IT's choices. *Id.* at 1013. First, the control panel's layout was "dictated by functional considerations." *Id.* at 1014. The trackball must have been in the middle so both left- and right-handed golfers could use it. Second, IT situated the buttons "for purposes of convenience"; this choice "cannot be said to be expressive." Third, an arrow is not "imaginative or creative," even though "something other than an arrow could have been used to indicate direction." *Id.* Here, UIRC may have chosen its language carefully, but as in *Incredible Technologies*, its choices were driven by convenience and function, not creativity. So, we hold that UIRC's documents are not entitled to copyright protection.

### C.

Before turning to attorney's fees, we review four final points.

*First*, UIRC's bond documents could resemble advertisements, which "are clearly copyrightable." 1 NIMMER, *supra*, § 2A.08(G)(4). Even if the bond documents were advertisements, the fact that a writing advertises a product does not make it per se copyrightable. The question remains whether the work has some spark of creative expression. *See id.* (whether content is dictated solely by functional considerations is still relevant issue in advertising context). As an advertisement or as a legal instrument, the uncopied parts of the bond documents are not creative enough.

*Second*, just as *Publications International* did not hold that recipes are per se uncopyrightable, we do not hold that bond documents are per se uncopyrightable. *See* 88 F.3d at 482. Legal documents could be copyrightable just as paintings are. *See generally* 1 NIMMER, *supra*, § 2A.11. And although legal documents are hardly works of art, the Supreme Court divorced meritoriousness and creativeness more than 100 years ago. *See Bleistein v. Donaldson Lithographing Co.*, 188 U.S. 239, 251–252 (1903).

*Third*, UIRC relies on *Seng-Tiong Ho v. Taflove* to argue it can copyright the "arrangement, expression and manner of presentation" of its documents. 648 F.3d 489, 499 (7th Cir. 2011) (quotations omitted). In *Taflove*, a professor and a graduate student sued another professor and graduate student, claiming copyright infringement of a mathematical model. *Id.* at 493–94. The plaintiffs in *Taflove* argued that the model's equations and figures, as well as the text describing the

model, were subject to copyright protection. *Id.* at 494, 500. Because their idea could be expressed in only one way, a copyright over that expression is invalid, so the court ruled for the defendants. *Id.* at 498, 500.

But UIRC focuses on a different part of the opinion. The *Taflove* plaintiffs relied on a Seventh Circuit case ensuring authors protection over the "arrangement, expression and manner of presentation" of mathematical data. *Id.* at 499; *see Flick-Reedy Corp. v. Hydro-Line Mfg. Co.*, 351 F.2d 546, 548 (7th Cir. 1965). But the *Taflove* court found that case to be about the style of the writing, not its words. *Taflove*, 648 F.3d at 499. And the *Taflove* plaintiffs did not argue that "the defendants appropriated their creative presentation" of their research, but that the defendants "copied the *substance* of the equations, figures and text." *Id.* The same is true here. UIRC focuses not on "such aspects as the color or font" of its documents but on the language it used. *Id.* It cannot shoehorn substance into caselaw addressing style.

*Fourth*, UIRC points out that witnesses described the documents as "creative," which it bears as a stone and sling sure to outmatch our precedent. But "an expert may not offer legal opinions," so we need not consider this testimony further. *Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013).

Having decided that the district court did not err by awarding summary judgment to Blair, we turn to UIRC's appeal of the district court's fees decision.

### III.  Attorneys' Fees

UIRC disagrees with the district court's award of $1,531,611.75 in attorneys' fees to Blair under the Copyright Act's fees provision. "In any civil action" under the Copyright

Act, a court "in its discretion" may "award a reasonable attorney's fee to the prevailing party … ." 17 U.S.C. § 505 (2023). Accordingly, we will reverse only if the district court abuses this discretion. *Sullivan v. Flora, Inc.*, 936 F.3d 562, 575 (7th Cir. 2019). An abuse of discretion is "an erroneous conclusion of law, a record that contains no evidence rationally supporting the court's decision, or facts that are clearly erroneous as the district court found them." *LHO Chicago River, L.L.C. v. Rosemoor Suites, LLC*, 988 F.3d 962, 967 (7th Cir. 2021).

The Supreme Court has permitted courts to use four factors to "guide [their] discretion." *Fogerty*, 510 U.S. at 534 n.19. The factors are:

> (1) the frivolousness of the suit; (2) the losing party's motivation for bringing or defending against a suit; (3) the objective unreasonableness of the claims advanced by the losing party; and (4) the need to advance considerations of compensation and deterrence.

*Live Face on Web, LLC v. Cremation Soc'y of Illinois, Inc.*, 77 F.4th 630, 631 (7th Cir. 2023) (citing *Fogerty*, 510 U.S. at 534 n.19)).

Ultimately, "there is a strong presumption that prevailing defendants may recover costs." *Design Basics, LLC v. Kerstiens Homes & Designs, Inc.*, 1 F.4th 502, 508 (7th Cir. 2021). When we have reversed a district court's entry of § 505 fees, we have done so because the district court failed to consider the *Fogerty* factors or reached an obviously wrong result when considering them. *See Mostly Memories, Inc. v. For Your Ease Only, Inc.*, 526 F.3d 1093, 1099 (7th Cir. 2008); *Eagle Servs. Corp. v. H2O Indus. Servs., Inc.*, 532 F.3d 620, 623 (7th Cir. 2008).

The district court considered all four factors and did not abuse its discretion in awarding fees to Blair. First, the court held UIRC failed to rebut the presumption in favor of Blair on the first factor (frivolousness). Second, the court assumed that UIRC won the second factor (improper motive) without much discussion. Third, the court sided with Blair on the third factor (objective unreasonableness of the claim). The district court found UIRC's decision not to be forthcoming about the Idaho documents, either earlier in the litigation or before the Copyright Office, problematic. Fourth, similarly, the court sided with Blair on the fourth factor (advancing considerations of compensation and deterrence) because of UIRC's failure to disclose.

Finally, Blair has requested that we extend the district court's fee order to the attorneys' fees it incurred defending this appeal. We invite Blair to move for those fees with the appropriate substantiation within 30 days of the date of this decision, after which UIRC will have 15 days to respond.

## IV. Conclusion

UIRC did not have a valid copyright in the bond documents it alleges Blair copied. Much of its language is indistinguishable from the language Idaho used in its documents, and the nontrivial additions are not copyrightable. To boot, the district court properly weighed the *Fogerty* factors, so it did not abuse its discretion in awarding fees to Blair.

We therefore AFFIRM the district court's decision to enter summary judgment for Blair and to award Blair fees.